483 A.2d 359

CELANESE CORPORATION

v.

COMPTROLLER OF the TREASURY.

· No. 14, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Nov. 9, 1984.

Robert P. Mittelman, Baltimore, with whom was Semmes, Bowen, & Semmes, Baltimore, on the brief, for appellant.

Gerald Langbaum, Asst. Atty. Gen. of Maryland with whom were Stephen H. Sachs, Atty. Gen. of Maryland and John K. Barry, Asst. Atty. Gen., on the brief, for appellee.

Argued before GARRITY and ALPERT, JJ., and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit (now Associate Judge of the Court of Special Appeals), Specially Assigned.

KARWACKI, Judge.

In this case Celanese Corporation challenges an assessment of the corporate income taxes by the Comptroller for the year 1975. The Maryland Tax Court agreed with the Comptroller, and its decision was affirmed by the Circuit Court for Baltimore City (Bothe, J.).

At the time of the taxable incidents which form the bases for the challenged assessment, Celanese, a Delaware corporation with headquarters in New York, manufactured and sold fibers, chemicals and plastics. It owned plants in Maryland, Virginia, South Carolina and Texas. In November of 1974, the appellant sold the real estate and tangible personal property that comprised its Deer Park, Texas plant. Celanese elected to treat the sale as an installment sale for Federal Income Tax purposes under § 453 of the Internal Revenue Code of 1954, as amended, (hereafter "I.R.C."). For the year at issue, 1975, Celanese received installments of the proceeds from the sale, part of which represented profits of $28,784,850. Federal law allowed $9,881,467 of these profits to be treated as a capital gain, while the balance of $18,903,383 was accorded ordinary income treatment. The parties to this case do not dispute the federal tax treatment of this profit. The treatment of

part of the profit as ordinary income is mandated by provisions of the I.R.C. dealing with recapture of depreciation when a depreciable asset is sold. I.R.C. §§ 1245 and 1250, Regulations § 1.1250 *et seq.*[1] These provisions were enacted in 1962 and 1963 and were intended to eliminate a windfall for corporate federal income taxpayers by denying to them favorable capital gain treatment on that portion of a profit made on the sale of capital assets which was attributable to certain kinds of depreciation. Congress thereby limited capital gain tax treatment to the true increase in the value of the assets sold during the time between their acquisition and disposition.

The instant dispute centers on the proper treatment of that portion of the profit which was ordinary income for federal purposes, i.e., $18,903,383, under Maryland's corporate income tax provisions. More specifically, should that portion of the profit attributable to the recapture of depreciation be allocated for state taxation to the State of Texas under Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 316(a), as contended by Celanese or should it be subject to apportionment under subsection (c) of that same section, as decided by the trial court in affirming the Maryland Tax Court?[2] Whatever the answer to that issue may be, the parties agree that this Federal ordinary taxable income is not allocable pursuant to Art. 81, § 316(b).

Article 81, § 316, in 1975 provided:

----

**1.** Congress has provided different rules for recapture, depending on the nature of the property. With respect to depreciable real property (I.R.C. § 1250), recapture applies to "accelerated" depreciation—that which is in excess of straight line depreciation. P.L. 88–272. With respect to personal property (I.R.C. § 1245), recapture applies to all depreciation. P.L. 87–834. The distinction between real and personal property and the respective amounts of depreciation subject to recapture is not relevant for purposes of this appeal.

**2.** Subsections (a) and (b) of Art. 81, § 316 were repealed by Chapter 294, Laws of Maryland 1984, applicable to all taxable years beginning after December 31, 1983. Therefore as to tax years beginning after that date there will be no allocation of income to a specified situs state. Rather, all net income of a corporation will be allocated in

The net income of a corporation (domestic or foreign) shall be allocated in the following manner:

(a) *Income from real estate or tangible personal property.*—Income from ground rents, rents and royalties and other income from real estate or tangible personal property permanently located in this State (less related expenses) shall be allocated to this State; and such income from real estate or tangible personal property permanently located outside this State (less related expenses), shall be allocated outside this State.

(b) *Capital gains and losses.*—1. Capital gains and losses from the sales of real property located in this State are allocable to this State. 2. Capital gains and losses from sales of tangible personal property are allocable to this State if: (A) the property had a situs in this State at the time of the sale; or, (B) the taxpayer's commercial domicile is in this State and the taxpayer is not taxable in the state in which the property had a situs. 3. Capital gains and losses from sales of intangible personal property are allocable to this State if the taxpayer's commercial domicile is in this State.

(c) *Business income.*—The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived from or reasonably attributable to the trade or business carried on within this State may be determined by a separate accounting where practicable, but never in

accordance with the apportionment formula set forth in former § 316(c).

the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-factor formula of property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property. The Comptroller of the Treasury shall have the right, in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State.

For the reasons hereafter set forth, we agree with the construction of § 316 by the lower court, and we will affirm.

Maryland's Income Tax Law was completely restructured by our legislature in 1967. Judge Singley speaking for the Court of Appeals in *Katzenberg v. Comptroller*, 263 Md. 189, 192, 204, 205, 282 A.2d 465 (1971) noted:

> Chapter 142 of the Laws of 1967 completely restructured Maryland's income tax law, by adopting as a base for State income tax purposes the adjusted gross income of an individual taxpayer (§ 280(a)) and the taxable income of a corporate taxpayer (§ 280A), as determined under the Internal Revenue Code, to and from which certain amounts, as specified by the Act, are to be added or deducted. On the resulting figure, § 288 of the Act imposes a graduated tax ranging from 2% to 5% for individuals, and a non-graduated tax for corporations. The scheme of exemptions, exclusions and deductions contained in the 1937 Act, as amended, was retained with modifications.

For the purposes of this opinion, the important change brought about by the Act was that for the first time capital gains and losses were brought within the ambit of the State income tax. This is so because gains and losses are reflected in the adjusted gross income of an individual and the taxable income of a corporation developed for federal tax purposes, to which the Maryland tax is applied.

... [T]he whole thrust of the Maryland Act is to impose a tax on the amount determined under the Internal Revenue Code as the adjusted gross income of an individual or the taxable income of a corporation. This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.

The "depreciation recapture" which is the subject of the instant case is not mentioned in the Maryland Income Tax Laws, but as we recently observed in *Comptroller v. Chesapeake Corp.*, 54 Md.App. 208, 214, 458 A.2d 459 (1983):

Whereas federal law must enumerate and define items of income in a wide variety of factual situations, Maryland law, by virtue of its adoption of the federal law, need not.

Illustrative of this policy is the fact that the Internal Revenue Code provides definitions of numerous items which are to be taken into income, while such definitions are conspiciuously absent in the Maryland income tax law. In Maryland the federal base is simply adopted.

With this theme of the Maryland Income Tax in mind, we approach our construction of § 316.

■ Our primary focus in construing this statute is to ascertain and effectuate the legislative intention. *In re Arnold M.*, 298 Md. 515, 520, 471 A.2d 313 (1984). To that end we have considered the context in which words of the statute are used and have viewed all pertinent parts, provisions and sections of the statute to assure a construction consistent with the entire statute. *Comptroller v. Mandel*

*Re-Election Committee,* 280 Md. 575, 374 A.2d 1130 (1977). Also, absent any clear indication to the contrary, the statute will be read so that no part thereof is "rendered surplusage, superfluous, meaningless or nugatory." *Baltimore Building & Construction Trades Council v. Barnes,* 290 Md. 9, 15, 427 A.2d 979 (1981).

■ Applying these principles we agree with the parties in this case that since the 1975 profit realized by the appellant was denied capital gain treatment under the I.R.C. and was therefore part of the ordinary federal taxable income of the corporation, that § 316(b) of the statute has no application. Viewing the remaining subsections of § 316, it is clear that unless that ordinary income for federal taxation purposes falls within the parameters of § 316(a), it necessarily must be the "remaining net income" within § 316(c).

We believe that when the statute and the provisions of all three of its subsections are given effect, the language of § 316(a) "income from ground rents, rents and royalties and other income from real estate or tangible personal property" could not encompass income arising from a sale without completely ignoring § 316(b), which is the subsection intended to deal exclusively with capital gains produced by sales. Since the federal ordinary income in question clearly does not qualify as income from ground rents, rents and royalties under § 316(a), the appellant argues that it falls within the description of "and other income from real estate or tangible personal property" in § 316(a). This argument is answered and refuted by the established rule of *ejusdem generis* applicable to this statutory construction. "[W]here general words in a statute follow the designation of a particular class, the general words are usually construed to apply only to those things of the same class as specifically mentioned." *Culotta v. Raimondi,* 251 Md. 384, 387, 247 A.2d 519 (1968); *Smith v. Higinbothom,* 187 Md. 115, 130, 48 A.2d 754 (1946). Income from a sale of an asset simply does not fit into the same class as income from ground rents, rents and royalties derived from the asset.

Lastly, we believe this construction of § 316(a) is reasonable and logical when the taxable incidents leading up to the recaptured depreciation *sub judice* are looked at in context. While Celanese was depreciating its Deer Park, Texas plant prior to its sale in 1974, it had permissibly reduced its federal taxable income to the extent of the depreciation claimed. This reduction in federal taxable income resulted in lower corporate taxes paid by the appellant in Maryland during the period of time when such depreciation took place, since the amount of the appellant's net federal taxable income subject to apportionment in Maryland under § 316(c) was reduced proportionately. It is inconceivable that the Legislature intended to permit the corporate taxpayer to reduce its tax liability to Maryland by apportionment of the depreciation deduction and at the same time to deny Maryland the right to benefit along with other states when the depreciation was recaptured for purposes of determining the federal taxable income on which this state computed its state income tax. Since the 1975 profits of the appellant flowing from its installment sale of its Deer Park, Texas plant in 1974 do not fit the definition of § 316(a) or 316(b) of Art. 81, they must be apportioned among the states where the appellant did business in accordance with the formula set forth in Art. 81, § 316(c).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.