511 A.2d 578

**FORD MOTOR LAND DEVELOPMENT CORPORATION**

v.

**COMPTROLLER OF the TREASURY.**

**No. 1497, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 11, 1986.

Certiorari Denied Nov. 5, 1986.

Shale D. Stiller and Jerome D. Carr (Robert M. Ercole and Frank, Bernstein, Conaway & Goldman, on brief), Baltimore, for appellant.

John K. Barry, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on brief), for appellee.

Argued before GARRITY and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

In these two appeals, consolidated in one record, from judgments entered by the Circuit Court for Baltimore City, Ford Motor Land Development Corporation, appellant, seeks to overturn two actions taken by the Comptroller of the Treasury, appellee, and affirmed by both the Tax Court and the circuit court: his assessment of additional income tax against appellant and his denial of appellant's claimed refund of taxes already paid. Ford's attack is double barrelled:

1. Because it had no federal taxable income in 1978, was Ford Land without taxable "net income" in 1978 in Maryland pursuant to [Art. 81,] Section 288(b)?;

2. If this Court determines that Ford Land had "net income" in 1978, ... whether Ford Land may offset the gain realized on the sale of the Maryland project by a net operating loss carry forward deduction arising from its losses in prior years (1973–1977) allocable to the Maryland Project.

Finding merit in appellant's first contention, we will reverse. It is, therefore, unnecessary to consider appellant's second contention.

Appellant, a Delaware corporation, organized in 1970 to engage in real estate development and related activities, is a wholly owned subsidiary of Ford Motor Company, with principal offices in Michigan. From the year of its organization until 1973, appellant pursued its activities exclusively in Michigan.

In 1973, appellant acquired its first and only parcel of Maryland real property, a little more than .7 acres of

undeveloped land in Montgomery County. It constructed on that parcel a commercial office building which, until its sale in 1978, it owned, operated and managed. In 1978, appellant sold the building and the land for $11.3 million dollars, realizing a net capital gain of $2,976,054.00. With the sale, appellant terminated all of its Maryland activities.

From the beginning, appellant suffered substantial losses from its Maryland real estate operation. These losses were reflected in its 1974–1978 Maryland Income Tax returns,[1] which, although appellant was clearly engaged in real estate leasing and development, requiring allocations of its income, were prepared on the apportionment basis. Its losses between 1974 and 1977, computed on that basis, totaled $1,378,260.00.

When appellant filed its 1978 Maryland Corporation income tax return, still using the apportionment method of accounting, it paid a tax of $94,658, plus $4,250.00 interest. Appellant determined that its operating loss for 1978 was $245,543.00. This figure was added to the losses incurred in prior years, and the total was deducted from the capital gain. To arrive at the tax paid, the tax rate of seven percent, *see* § 288(b) and (c), was applied against the resulting figure.

The Comptroller conducted a desk audit and, by "notice of corporation tax audit change", increased appellant's tax and interest liability by $74,950.55.[2] Appellant appealed the assessment to the Tax Court.

Appellant then filed an amended 1978 Maryland Corporation income tax return, in which it requested a refund of the full tax and interest previously paid. In that amended return, computed on the allocation basis, appellant showed

---

1. Appellant did not file a Maryland income tax return for 1973. Although it had gross income in that year, it had no taxable income.

2. The original notice requested an amount of $102,202.14, composed of $92,217.77 increased tax and $9,984.37 increased interest. The final figure was noted in a subsequent notice.

accumulated losses in the amount of $3,297,397.36 for the years 1973 through 1978. These losses included a stipulated 1978 operating loss of $435,352. Since the losses exceeded the amount of the capital gain, appellant contended that no tax was due. The Comptroller disagreed and denied the requested refund. Appellant again appealed to the tax court.

The Tax Court affirmed both the Comptroller's assessment of additional tax and his denial of appellant's requested refund of taxes and interest paid. Responding to appellant's argument, "Because it had no federal taxable income for 1978, it had no "net income" allocable to, or taxable, in, Maryland", the court explained:

> Unfortunately for the Petitioner, however, the nature of the State tax system demands that several modifications or adjustments from the federal taxable income be made. An adjustment to what is shown on the federal return may be necessary for Maryland purposes, for example, where the taxpayer filed a consolidated return for affiliated corporations for federal purposes, which type of return is not permitted under Maryland law. Art. 81, § 295. *Comptroller v. Atlantic Supply,* 294 Md. 213 [448 A.2d 955] (1982). This adjustment could require the corporation to file a pro forma federal return for the separate corporation. Another adjustment is when an adjustment is necessary to produce a final figure of income tax is taxable by Maryland because the corporation conducts its business in a number of states. [sic] Such federal taxable income must be subjected to either the apportionment formula of Section 316(c) or the complete inclusions or exclusions by allocation of Section 316(a) or (b) relating to rental income or capital gains that might be allocated entirely to or outside of Maryland. The last type of adjustment results from the addition and subtraction modifications of Section 280 A(b) and (c) which alter the normal federal rules and results for particular types of income. All three of these adjustments exist in the instant case.

The Tax Court thus found that the capital gain was Maryland net income, taxable by Maryland, and further, that the Maryland Tax system does not establish an operating loss deduction or account separate from that permitted by federal law, which only creates an entity deduction.

Appellant fared no better in the circuit court, which affirmed the Tax Court decision.

Our task is to determine the meaning of the term, "net income", and, given its relationship to the federal concept of "taxable income", the effect of that term, as used in the Maryland tax law. Our task, is therefore, one of statutory construction. In approaching this task, we seek to ascertain and effectuate the legislative intention. *Jones v. State,* 304 Md. 216, 220, 498 A.2d 622 (1985); *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313 (1984); *Celanese Corp. v. Comptroller,* 60 Md.App. 392, 397, 483 A.2d 359 (1984). "Where the language [of the statute] is clear and free from doubt the Court has no power to evade it by forced and unreasonable construction" *State Tax Comm. v. C & P Tel. Co.,* 193 Md. 222, 231, 66 A.2d 477 (1949). Thus, where "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly". *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984). Furthermore, the statute must be construed considering the context in which the words are used and viewing all pertinent parts, provisions, and sections so as to assure a construction consistent with the entire statute. *Comptroller v. Mandel Re-election Com.,* 280 Md. 575, 579, 374 A.2d 1130 (1977). And, if there is no clear indication to the contrary, a statute must be read so that no part of it is "rendered surplusage, superfluous, meaningless or nugatory." *Bd. of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982); *Baltimore Building and Construction Trades Council v. Barnes,* 290 Md. 9, 15, 427 A.2d 979 (1981). On the other hand, we "shun a construction of the statute which will lead to absurd consequences". *Erwin and Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 311,

498 A.2d 1188 (1985), or "a proposed statutory interpretation if its consequences are inconsistent with common sense". *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195 (1985).

With these principles in mind, we set forth those portions of the Maryland tax law which are necessary to the fulfillment of our task. Article 81, § 280A(a) provides, in pertinent part:

The net income of a corporation shall be the taxable income of such taxpayer as defined in the laws of the United States as amended from time to time and for the corresponding taxable period. . . .

Sections (b) and (c) provide for adjustments, *e.g.,* additions to or subtractions from the federal taxable income of the corporation. None of those adjustments is applicable to this case.

The tax on corporate income is imposed by § 288, which, in 1978, provided:

(b) Basic tax on corporations.—There is hereby annually levied and imposed for 1968 and subsequent years, a tax on *the net income of every corporation (domestic or foreign)* at the rate of six and one quarter percent (6¼%) *of such portion thereof* as is allocable to this State under the provisions of § 316 hereof. (emphasis added) [3]

Section 316, Allocation of Corporate Income, provided:

*The net income of a corporation* (domestic or foreign) *shall be allocated in the following manner:*

(a) *Income from real estate or tangible property.—*

Income from ground rents, rents and royalties and other income from real estate or tangible personal property permanently located in this State (less related expenses) shall be allocated to this State; and such income from real estate or tangible personal property permanent-

---

**3.** Section 288(c) provided that an additional tax of 0.75% be imposed on all corporations for Transportation Trust Fund. The tax, as in subsection (b), is imposed upon "such portion [of the net income] as is allocable to this State under the provisions of § 316 hereof. . . ."

ly located outside this State (less related expenses), shall be allocated outside this State.

(b) *Capital gains and losses.—*

1. Capital gains and losses from sales of real property located in this State are allocable to this State. 2. Capital gains and losses from sales of tangible personal property are allocable to this State if: (A) the property had a situs in this State at the time of the sale; or, (B) the taxpayer's commercial domicile is in this State and the taxpayer is not taxable in the State in which the property had a situs. 3. Capital gains and losses from sales of intangible personal property are allocable to this State if the taxpayer's commercial domicile is in this State.

(c) *Business income.—*

The remaining net income hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly in this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived from or reasonably attributable to the trade or business carried on within this State may be determined by a separate accounting where practicable, but never in the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-factor formula of property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property. The

Comptroller of the Treasury shall have the right, in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State.[4] (emphasis added)

Appellant's argument is that, unless the corporation has federal taxable income, it cannot have Maryland net income. Appellant reasons that § 280A defines the base, which may be adjusted upward or downward, § 280A(b) and (c), upon which Maryland corporate income taxes are payable; §§ 288(b) and (c) prescribe the rate to be applied to that base and directs that it shall be applied against the portion of the base allocable to Maryland; and § 316 prescribes the methods by which the taxable base is allocated between Maryland and the rest of the world. This scheme, it concludes, makes clear that § 316 is merely an allocation mechanism, not one for adjusting the taxable base. In a sense, then, appellant argues that federal taxable income is not only a base for the computation of Maryland net income, but also a ceiling on Maryland tax.

The Comptroller, characterizing appellant's argument as "pure linguistic analysis" and "mechanistic linguistics", urges that we reject appellant's position because "it is not directly ordained by statute [and] ... is *totally dependent upon a particular interpretation of 'net income' ...*" (emphasis in the original). He argues:

> While Ford maintains that this inclusion of the phrase "taxable income" means positive taxable income for the

---

**4.** By Chapter 294 Laws of Maryland 1984, applicable to all taxable years beginning after December 31, 1983, §§ (a) and (b) were repealed. The repeal does not, however, affect this case.

corporation as a whole, this is not in fact the case. No such intent can be found from the statutory scheme taken as a whole; instead, that statutory scheme, with its required allocations between Maryland and foreign income, mandates that the phrase "taxable income" means that figure which results from those separate portions of "taxable income" that, when combined together, yield the income or loss shown on the taxpayer's federal return for that year. In a case such as this, where some of the component parts (or "portions") do produce "taxable income" (clearly a capital gain is taxable income), and some produce a taxable loss, the position of the Comptroller allows all three statutes (§ 316, § 280A(a) and § 288) to work in harness together, according to their basic principles: operating income is apportioned (producing no tax if the amount taxable as operating income is not income but a loss); the allocated Maryland share of any such apportioned loss reduces situs allocated taxable income; non-Maryland allocated losses (whether from situs gains or apportioned operations) do not offset income earned in Maryland; and mechanistic linguistics are not used to read into the taxation scheme an artificial ceiling not expressly imposed by the legislature.

The effect of the Comptroller's position is to construe § 316, in this case, particularly subsection (b) as an adjustment to, rather than allocation device for, a corporation's "taxable income".

■ When the rules of statutory construction are applied to the relevant statutes, we find appellant's "pure linguistic analysis" and "mechanistic linguistics" to be, not only persuasive, but compelling. The plain meaning of the taxing scheme is clear: since "net income" for corporate tax purposes is federal "taxable income", § 280A, and the tax is imposed only on the net income of a corporation, § 288(b) and (c), but only to the extent "of such portion [of net income] as is allocable to this State," § 288(b) and (c), and

§ 316 prescribes the method of allocating the "net income of a corporation," "net income" is a prerequisite to State taxation. Furthermore, although never explicitly stated in any case [5], the cases which have considered this State's system of taxation support the proposition.

*Katzenberg v. Comptroller,* 263 Md. 189, 282 A.2d 465 (1971) and *Marco Assoc. v. Comptroller,* 265 Md. 669, 291 A.2d 489 (1972) provide a detailed analysis of the structure and operation of the Maryland corporate income tax system, including its interrelationship with the federal system. In *Katzenberg,* the Court of Appeals recognized the scope of the legislative prerogative to tax in this area:

> It is undoubtedly true that the General Assembly, had it seen fit, to do so, could have imposed a tax on a taxpayer's gross income, without considering the source from

---

**5.** The Maryland Tax Court has recently taken this position in *American Satallite Corporation v. Comptroller,* (Income Tax No. 2061, April 16, 1986), a case in which the corporation, despite having realized a long term capital gain as a result of the sale of intangible personal property, sustained a loss for federal income tax purposes when it applied net operating loss carry forwards against its income. Responding to the Comptroller's argument that § 316 permits taxation of the capital gain even though the corporation had no net income, the court held:

> As Section 288(b) indicates, Section 316 only comes into play when a corporation has net income as defined under Section 280 A. It is not a separate basis for imposing tax. Our conclusion is supported by the introductory language of Section 316 which states that "The net income of a corporation (domestic or foreign) shall be allocated in the following manner...." Thus, Section 316 prescribes the way in which corporate net income shall be allocated for tax purposes between Maryland and the rest of the world. The statute presupposes the existence of net income and if there is none it does not apply.

The court distinguished its decision in the case *sub judice,* thusly:

> Ford dealt with a taxpayer whose Maryland operations were unprofitable but whose out-of-State operations were profitable.... The taxpayer attempted to report only its unprofitable Maryland operations and thus avoid payment of tax. In essence, the corporation was attempting to circumvent Section 280 A and jump right into Section 316.

The Comptroller has appealed the decision to the Circuit Court for Baltimore City.

which it came, whether it be earnings, investment income or profits realized from sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based.... (citation omitted)

*Id.* 263 Md. at 205, 282 A.2d 465. *See Marco,* 265 Md. at 677, 291 A.2d 489. The Court went on to explain how the legislature had chosen to exercise its discretion:

Chapter 142 of the laws of 1967 completely restructured Maryland's income tax law, by adopting as a base for State income tax purposes ... the taxable income of a corporate taxpayer (§ 280 A), as determined under the Internal Revenue Code, to and from which certain amounts, as specified by the Act, are to be added or deducted. On the resulting figure, § 288 of the Act imposes a ... non graduated tax for corporations....

*Id.,* 263 Md. at 192, 282 A.2d 465. Thus,

[T]he whole thrust of the Maryland Act is to impose a tax on the amount determined under the Internal Revenue Code as the ... taxable income of a corporation. This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.

*Id.* 263 Md. at 204–205, 282 A.2d 465. *Marco,* 265 Md. at 674, 291 A.2d 489. Having adopted a system "inextricably keyed" to the definition of taxable income under federal law, *Comptroller v. Chesapeake Corp.* 54 Md.App. 208, 213, 458 A.2d 459 (1983), "because gains and losses are reflected in the ... taxable income of a corporation developed for federal tax purposes, to which the Maryland tax is applied," *Katzenberg,* 263 Md. at 192, 282 A.2d 465, capital gains and losses are within the ambit of the State income tax. But, as *Marco* makes clear, "the Act does not purport

to be a tax on capital gains as such ..., but is rather a tax liability derived from the concept of income developed for federal income tax purposes." *Id.,* 265 Md. at 675, 291 A.2d 489. *See also Comptroller v. Chesapeake Corporation, supra,* 54 Md.App. at 214, 458 A.2d 459 ("[A]n item appearing in a corporation's federal return as 'taxable income' must be similarly reflected as 'net income' in the corporation's Maryland return.").

We interpret *Katzenberg* and *Marco,* consistent with our view, to mean that the essential, initial determination which must be made before a corporation may be subjected to Maryland tax is whether that corporation has federal taxable income. The recent case of *Celanese Corporation v. Comptroller, supra,* buttresses this conclusion. There, we were concerned with the proper treatment, under Maryland tax law, of a portion of a depreciation recapture, treated, for federal income tax purposes, as ordinary income, *i.e.,* "should that portion of the profit attributable to the recapture of depreciation be allocated for State taxation to the State of Texas under Maryland Code ..., Art. 81, § 316(a), as contended by Celanese [the appellant], or should it be subject to apportionment under subsection (c) of that same section, as decided by the trial court in affirming the Maryland Tax Court?" *Id.* 60 Md.App. at 394, 483 A.2d 359. In explaining our conclusion that it should be apportioned, we said:

> While Celanese was depreciating its Deer Park, Texas plant prior to its sale in 1974, it had permissibly reduced its federal taxable income to the extent of the depreciation claimed. *This reduction in federal taxable income resulted in lower corporate taxes paid by the appellant in Maryland during the period of time when such depreciation took place, since the amount of the appellant's net federal taxable income subject to apportionment in Maryland under § 316(c) was reduced proportionately.* It is inconceivable that the Legislature intend-

ed to permit the corporate taxpayer to reduce its tax liability to Maryland by apportionment of the depreciation deduction and at the same time to deny Maryland the right to benefit along with other states when the depreciation was recaptured for purposes of determining the federal taxable income on which this state computed its state income tax. (emphasis supplied)

*Id.*, 60 Md.App. at 399, 483 A.2d 359.

We find further support for this conclusion in the federal definition of taxable income: " 'taxable income' means gross income minus the deductions allowed by this chapter." 26 U.S.C. § 63(a). *See Home Mut. Ins. Co. v. C.I.R.*, 639 F.2d 333, 350 (7th Cir., En Banc Opinion on Rehearing) *cert. denied* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1980) ("Taxable income is simply that portion of taxpayer's gross income that Congress has chosen to tax."). We think it obvious that the resulting figure must be a positive number.

Notwithstanding that they are not from courts of last resort, we find the out-of-state cases cited by appellant to be persuasive. In *Commonwealth v. Columbia Steel and Shafting Company*, 83 D. & C. 326 (Pa.Orph.Ct.Dau.Cty., 1951), the court found that a foreign corporation doing business both within and without Pennsylvania, which reported an $83,000 loss on its federal income tax return, owed no Pennsylvania income tax despite its having sold Pennsylvania capital assets in Pennsylvania for a profit. The Pennsylvania statute taxed "net income ... as returned to and ascertained by the Federal Government." The Act also contained provisions, similar to Maryland's, for allocating or apportioning the net income of the corporate taxpayer. The court ruled:

Here we find that net income *as defined in clause 1* is to be allocated and apportioned. Net income in clause 1 is the "net income as returned to and ascertained by the Federal Government." It is agreed that the net income of defendant as returned to and ascertained by the Feder-

al Government in the present case was a loss of $83,-407.01, or, if you please, a negative number. We are unable to comprehend how a net loss can be construed as net income. The tax is levied on each dollar of net income, not on each dollar of the net loss. If we be correct in this hypothesis, there is no net income as defined in clause 1 to be allocated and apportioned under clause 2, in which event no tax is due for the period involved. We base our decision on this construction. (emphasis in original)

*Id.,* 83 D and C at 329. A similar result was reached in *Decision of State Tax Board,* Docket Nos. 258, 258–A, State Tax Reporter [1 Del.] (CCH) Par. 200–047 (1962), *aff'd sub nom, State Commissioner v. Atlantic Aviation Corp.,* State Tax Reporter [1 Del.] (CCH) Par. 200–149 (Del.Sup. Ct., New Castle County, 1966.) We are not persuaded that the fact that the statute in that case defined taxable income, as "the portion of the entire net income of a corporation which is allocated and apportioned to this State ..." detracts, in any way, from the logic of the conclusion reached or its applicability to the case *sub judice.*

In summary, we reject the Comptroller's contention that § 316(b) allows taxation of the capital gain realized by appellant from the sale of property in Maryland even though appellant had no net income as defined by § 280A. In our view, as we have explained above, § 316 becomes operative only if there is net income, in which event that net income is to be allocated or apportioned pursuant to its terms.

JUDGMENTS REVERSED.

CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER REMAND TO THE MARYLAND TAX COURT, FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY COMPTROLLER.