540 A.2d 1146

**COMPTROLLER OF THE TREASURY INCOME TAX DIVISION**

v.

**AMERICAN SATELLITE CORPORATION.**

**No. 89, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 10, 1988.

John K. Barry, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gerald Langbaum, Asst. Atty. Gen., on brief) Annapolis, for appellant.

Michael L. Quinn (Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

The question presented is whether, under Maryland's income tax statutes, out-of-state losses incurred by a multi-state corporation reporting no federal taxable income may offset in-state capital gains allocable to this State under Maryland Code (1957, 1980 Repl.Vol.), Article 81, § 316(b)(3).

## I.

Maryland's corporate income tax was originally enacted in 1937.[1] This Act taxed the "net income" of a corporation for the years 1937 and 1938 only. Codified as Code (1935 Supp.), Article 81, § 219, "net income" was defined as "the gross income of a taxpayer less the deductions allowed by this subtitle."[2] The tax law subsequently went through various revisions but remained basically unchanged until 1967 when ch. 142 was enacted which significantly restructured the State income taxation system. Under the new law, codified as Code (1957, 1980 Repl.Vol.), § 280A(a), federal taxable income was adopted as the base from which State tax liability was to be determined. This subsection provides in pertinent part:

"The net income of a corporation shall be the taxable income of such taxpayer as defined in the laws of the United States ... except as hereinafter modified."[3]

Section 280A(b) and (c) immediately following set forth certain items that must either be added to or subtracted from the corporation's federal taxable income in determining its net income.

If the taxpayer is a multi-state corporation, § 316 provides the method by which its net income is allocated between Maryland and other states in which it conducts business. At the time the dispute arose in this case, § 316(b)(3) provided:

"(b) *Capital gains and losses.*— ...

3. Capital gains and losses from sales of intangible personal property are allocable to this State if the taxpayer's commercial domicile is in this State."

---

1. Chapter 11 of the Acts of 1937, Special Session. For a history of the development of this law, *see* Cairns, "History and Constitutionality of Maryland Tax Law," 2 Md.L.Rev. 1 (1937).

2. Unless otherwise indicated, all section references are within Art. 81.

3. Capital gains and losses are, of course, reflected in federal taxable income.

Section 316(c) then describes how the remaining net income, *i.e.*, the "business income" of the corporation not allocable under either § 316(a), pertaining to income from real estate or tangible personal property, or § 316(b), is to be apportioned.[4]

The State income tax, imposed pursuant to § 288(b), is levied "on the net income of every corporation (domestic or foreign) at the rate of six and one quarter percent (6¼%) of such portion thereof as is allocable to this State under the provisions of § 316 hereof." To this rate is added ¾% which is earmarked for the Transportation Trust Fund. § 288(c).

## II.

In 1982, the Comptroller of the Treasury made a $252,-786.36 assessment against American Satellite Corporation (ASC) for a claimed deficiency in its Maryland income taxes. The alleged deficiency resulted from a $5,000,000 intangible capital gain realized by ASC, all of which was allocable to Maryland under then existing § 316(b)(3) as ASC was domiciled in this State. A calendar year taxpayer, ASC had filed a consolidated federal tax return with its parent company, Fairchild Industries. Pursuant to § 295, affiliated corporations must file separate tax returns. Had ASC done so, its federal taxable income for 1982 would have been $1,437,808, but because of net operating losses (NOL) totaling $51,687,-594 carried over from previous years, which completely offset this amount, ASC's federal taxable income was reduced to zero. Claiming that it had no "net income" under § 280A(a), ASC showed no taxable income on its Maryland return. It later conceded that the proper amount of net State taxable income was $14,229; that figure was the combined amount of addition modifications to federal taxable income of zero for State and local income taxes and personal property taxes as required by § 280A(b) and

---

4. Chapter 294 of the Acts of 1984 repealed the situs allocation provisions of § 316(a) and (b).

§ 288(g). Based on this computation, the Comptroller determined that ASC owed additional taxes in the amount of $252,786.36. He assessed the deficiency by apportioning the losses so that only $1,297,452 instead of the full $51,-687,594 of NOL was available to ASC to reduce its in-state capital gain. The Comptroller thus made the following calculations: (1) taking ASC's taxable base of $14,229 (federal taxable income of zero arrived at in accordance with § 280A(a) plus the § 280A(b) and § 288(g) modifications); (2) then subtracting out the $5 million capital gain subject to 100% situs allocation pursuant to § 316(b)(3) (allocable items are 100% taxable to Maryland and should not be apportioned); (3) which resulted in a negative figure of $-4,985,-771; (4) then multiplying this number by .260231, the 3-factor apportionment fraction as provided for under § 316(c), equalling $-1,297,452 (representing the operations subject to apportionment); (5) adding back the $5 million allocated capital gain not subject to apportionment; (6) resulting in Maryland taxable income of $3,702,548; (7) multiplied by 7% (the tax rate provided for under § 288); (8) which computed out to $259,178.36; (9) from which a $6,392.00 credit was subtracted pursuant to § 288(g); (10) resulting in a final tax owed of $252,786.36.[5]

---

**5.** In his brief, the Comptroller succinctly tabulates his assessment as follows:

```
     "$14,229   (taxable income of zero + § 280A modifications)
 –$5,000,000   (allocated capital gain under § 316(b))
 –$4,985,771
    x.260231   (apportionment fraction)
 –$1,297,452   (apportionment loss)
 +5,000,000    (allocated capital gain)
  $3,702,548   (Maryland taxable income)
        x.07
  $259,178.36
    –6,392.00 [3]
  $252,786.36
```

"[3] This amount represents Maryland personal property taxes and is a portion of the $14,229 figure noted above. It is creditable against corporate income tax liability."

The Comptroller maintained that § 316(b)(3) operated to modify the federal taxable base just as § 280A(b) and (c) did. In support of his position, the Comptroller relied on the language contained in § 280A(a)—"except as hereinafter modified"; he contended that when the statute is read as a whole the provisions of § 316(b)(3), requiring that capital gains be allocable to Maryland if the taxpayer's commercial domicile is in this State, are also included within this phrase. This reading, according to the Comptroller, insured consistency in the taxation of capital gains and losses, *i.e.*, that because out-of-state profits are not taxable in Maryland, neither should out-of-state losses be allowed to offset Maryland gains. The Comptroller argued that it was a more equitable interpretation of the statutory scheme if the losses were apportioned to determine the amount thereof which actually occurred in Maryland, as required by § 316(b). Thus, even though ASC reported no net income for federal tax purposes, the Comptroller argued that the Maryland capital gain would still be subject to Maryland income tax.

In an order dated April 16, 1986, the Maryland Tax Court reversed the assessment of the additional tax. In its memorandum, the court explained:

"As Section 288(b) indicates, Section 316 only comes into play when a corporation has net income as defined under Section 280A. It is not a separate basis for imposing tax. Our conclusion is supported by the introductory language of Section 316 which states that 'The net income of a corporation (domestic or foreign) shall be allocated in the following manner....' Thus, Section 316 prescribes the way in which corporate net income shall be allocated for tax purposes between Maryland and the rest of the world. The statute presupposes the existence of net income and if there is none it does not apply."

On appeal, the Circuit Court for Baltimore City affirmed the order of the Tax Court, finding that *Ford Motor Land Dev. v. Comptroller,* 68 Md.App. 342, 511 A.2d 578, *cert. denied,* 307 Md. 596, 516 A.2d 567 (1986) was dispositive of

the issue. In his petition for certiorari, which we granted, the Comptroller asks that we overrule *Ford Motor* and hold that income allocable to Maryland is taxable even though it may be exceeded by losses attributable to business carried on outside of Maryland.

### III.

In *Ford Motor,* a multi-national Delaware corporation was engaged in real estate development and related activities in Maryland. It owned real property in this State, which it sold in 1978, realizing a net capital gain of almost three million dollars. As the corporation had suffered overall net operating losses between 1973 and 1978, which exceeded the amount of its 1978 capital gain, it reported no federal taxable income for the year. It claimed, therefore, that it had no "net income" allocable to, or taxable in Maryland, and therefore requested a refund for State taxes already remitted. The Comptroller, on the other hand, had assessed an additional $74,950.55 against the company, over the original tax of $94,658 previously paid, contending that pursuant to the capital gains provisions of § 316(b), further adjustments had to be made to federal taxable income when the taxpayer is a multi-state corporation. He maintained that the capital gain would be considered Maryland net income, and thus taxable by the State. The Tax Court upheld the assessment and denial of the refund; its order was affirmed by the Circuit Court for Baltimore City.

Resolving the issue as a matter of statutory construction, the Court of Special Appeals held that when a taxpayer has no "net income," as defined by § 280A(a), the allocation provision of § 316(b) simply does not apply. Thus, in effect, the court viewed the federal tax base as a ceiling on net income subject to Maryland tax (adjustable only by subsections (b) and (c)). It said:

"The plain meaning of the taxing scheme is clear: since 'net income' for corporate tax purposes is federal 'taxable income', § 280A, and the tax is imposed only on the net income of a corporation, § 288(b) and (c), but only to the

extent 'of such portion [of net income] as is allocable to this State,' § 288(b) and (c), and § 316 prescribes the method of allocating the 'net income of a corporation,' 'net income' is a prerequisite to State taxation." 68 Md.App. at 350–51, 511 A.2d 578.

## IV.

We think *Ford Motor* was correctly decided. Section 280A(a) clearly provides that a corporation's net income is its taxable income "as defined in the laws of the United States." Section 280A(b) ("[a]mounts to be added to taxable income") requires that certain additions be made to the taxable income of the taxpayer, while § 280A(c) ("[a]mounts to be subtracted from taxable income") permits the subtraction of designated items from taxable income. The "[a]llocation of corporate income" provisions pertaining to capital gains and losses contained in § 316(b) are simply not within the purview of the modifications to taxable income under § 280A(b) or (c).

In construing the meaning of "net income" under §§ 280A(a) and 288(b), our primary goal is to ascertain and effectuate legislative intent. *Comptroller v. Fairchild Industries,* 303 Md. 280, 284, 493 A.2d 341 (1985); *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313 (1984); *Scott v. State,* 297 Md. 235, 245, 465 A.2d 1126 (1983). To this end, the language of the statute itself is the best indication of the legislature's intention and in construing the statutory language, the words should be given their ordinary and natural import. *Comptroller v. Fairchild Industries, supra,* 303 Md. at 284, 493 A.2d 341; *Management Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310 (1984); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738 (1979). However, the plain meaning rule is not controlling when a contrary legislative purpose is manifestly evident, as we held in *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987). In that case, we found that "external manifestations," such as legislative committee reports and other pertinent legislative history,

may be considered to provide the proper context in which to read the statutory language. 309 Md. at 515, 525 A.2d 628. As a result, we recognized that the meaning of the plainest language may be controlled by the context in which it appears.

We discern no clear legislative purpose or goal that would compel us to conclude that the pertinent statutory language now under consideration should not be afforded its plain import. Significantly, legislative committee reports clearly indicate that the purpose in enacting ch. 142 in 1967 was to bring the State taxation system in conformity with the federal scheme. *Report of the Committee on Taxation and Fiscal Reform (Report)* (February 1, 1967). *See also Katzenberg v. Comptroller*, 263 Md. 189, 204–05, 282 A.2d 465 (1971); *Evans v. Comptroller*, 273 Md. 172, 175, 328 A.2d 272 (1974); *Marco Assoc. v. Comptroller*, 265 Md. 669, 674, 291 A.2d 489 (1972); 66 Op. Att'y Gen. 242, 247 (1981); 52 Op. Att'y Gen. 451, 452–53 (1967). As the report indicates, such conformity was thought to foster enforcement. *Report* at 8. This effort to simplify the taxation system might not fulfill its purpose if, after using federal taxable income as the base for determining State tax liability, the Maryland statutes then imposed additional adjustments which significantly altered the base, other than the simple modifications provided by § 280A(b) and (c).

Contrary to the Comptroller's position that the modifications referred to in § 280A(a) also include adjustments under § 316(b), the "Technical Supplement to the 1975 Report of the State Tax Reform Study Committee" (Legislative Council of Maryland, Feb. 1976) includes at 145 a breakdown of corporate income tax liability, which provides in pertinent part:

"*Revenue Base.* The net income of a corporation (domestic or foreign) having income allocable to Maryland as defined in the laws of the United States as modified by the addition and subtraction adjustments below:

ADDITIONS—

—Income taxes imposed by the State of Maryland, and any other state, the District of Columbia and any political subdivision of the State of Maryland or any other state.

—Net capital loss carry-back.

—The oil percentage depletion allowance."

These additions correspond exactly to the modifications listed in § 280A(b) as it appeared in 1982. Nowhere is § 316(b) calculated to increase the revenue base as determined by federal law when there is no federal taxable income for the year in question.

We, therefore, share the view taken by the Court of Special Appeals in *Ford Motor.* We conclude that the Comptroller's attempt to read into the provisions of § 280A(b) another addition to taxable income from § 316(b) is wholly at odds with the legislative purpose, as expressed in the words of the governing statutes.

Moreover, the Comptroller's attempt to invoke the language of § 288(b) in support of his position is misguided. The statute clearly imposes a tax only on "such *portion* [of net income] as *is* allocable to this State under the provisions of § 316." (Emphasis added.) Section 316 cannot be used to create additional net income as a "portion" cannot be more than the whole. *See Comptroller v. Fairchild Industries, supra,* 303 Md. at 288, 493 A.2d 341 (courts should not construe statutes contrary to common sense). Although the Comptroller argues that "net income" will have many portions, this is not what the Legislature intended when it enacted § 288(b). As § 288(b) taxes only a "portion" of net income, Maryland taxable income (except as modified by § 280A(b)) cannot be greater than the corporation's federal taxable income. Furthermore, this finding is consistent with the rule that doubts concerning the scope of a taxation statute should be construed in favor of the taxpayer and against the State. *Xerox Corp. v. Comptroller,* 290 Md. 126, 126–37, 428 A.2d 1208 (1981); *Balto. Foundry v. Comptroller,* 211 Md. 316, 319–20, 127 A.2d 368 (1956).

## V.

As a final matter, the Comptroller refers to language in *Ford Motor* indicating that "taxable income" must always be positive. The Comptroller now contends that taxable income is not always zero or better as a matter of federal law. We find it unnecessary to consider this question for the following reasons.

First of all, the Comptroller had stipulated that ASC's federal taxable income was reduced to zero because of its net operating losses. He did not contend that it was reduced to less than zero. Thus, now arguing that federal taxable income can be a negative number is irrelevant to the resolution of this case.

Furthermore, we think the Comptroller overemphasizes the significance of the language questioned in *Ford Motor*. We think the court's statement must be read in the context of that case, *i.e.*, that the taxpayer had no net income as defined under federal law which was required to be allocated. In other words, we understand the court in *Ford Motor* to say that there must be something to allocate in the first place.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.