**TAXATION**

**CORPORATE INCOME TAX – WHETHER FEDERAL STIMULUS GRANT RECEIVED BY A PUBLIC UTILITY WOULD BE SUBJECT TO MARYLAND INCOME TAX**

February 23, 2010

*The Honorable Rona E. Kramer*
*Maryland Senate*

You have requested our opinion as to whether federal stimulus funds received as part of the American Recovery & Reinvestment Act of 2009 ("ARRA") by a Maryland public utility are subject to state taxes. Specifically, you have asked if a federal stimulus grant received by the public utility for up to 50% of the costs of an Advanced Meter Infrastructure regulatory asset would be subject to Maryland income tax.

For the reasons given below, it is our opinion that a Maryland public utility receiving a grant for the costs of such a regulatory asset under ARRA would be required to pay Maryland income tax on the grant.

**I**

**Federal Stimulus Funds**

*A.     The Smart Grid Investment Matching Grant Program*

In 2007, as a part of the Energy Independence & Security Act of 2007 ("EISA"), Pub. L. No. 110-140, 121 Stat. 1492, Congress established a Smart Grid Investment Matching Grant Program. The statute   directed the Secretary of Energy to set up a federal matching grant program to encourage and assist public utilities in upgrading the existing United States electric power grid by investing in "Smart Grid" technology. EISA §1306, *codified* at 42 U.S.C. §17386. Under the program as originally enacted, the Secretary was directed to establish a fund and implement a grant program to provide up to 20% of qualifying Smart Grid investments for public utilities. *Id.* Pertinent to your inquiry, the legislation defined Smart Grid investments as those in "metering devices, sensors, control devices, and other devices integrated with and attached to an electric utility

system or retail distributor or marketer of electricity that are capable of engaging in Smart Grid functions," as well as "transmission and distribution equipment fitted with monitoring and communications devices to enable smart grid functions." 42 U.S.C. §17386(b)(3) & (4). The legislation further directed the Secretary to set up grant application procedures within one year of the date of passage of EISA, anti-fraud and misfeasance safeguards, and procedures for advance payment of up to the full amount of the grant award. 42 U.S.C. §17386(e).

### B.   *American Recovery & Reinvestment Act*

Two years later, in connection with the American Recovery & Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115, Congress made one substantive and several procedural modifications to the Smart Grid Investment Matching Grant Program. *See* ARRA, §405(5)-(8). Substantively, ARRA §405(5) significantly increased the maximum size of the Smart Grid grants, from 20% of qualifying investments to 50% of qualifying investments. Procedurally, section 405(8) reduced the Secretary's implementation time from one year to 60 days. *See* 42 U.S.C. §17386(a) & (e).

As we understand the proposal that prompted your inquiry, the Maryland public utility has applied for a 50% matching grant under the Smart Grid program, to support investment in an Advanced Meter Infrastructure regulatory asset. The estimated cost of the project is $90 million, for which the utility may be eligible for a grant award of up to $45 million.

## II

## Income Tax Liability of a Corporation

### A.   *The Federal Income Tax Law*

The Maryland income tax law is "inextricably keyed" to the federal income tax law. *Comptroller v. Diebold*, 279 Md. 401, 408, 369 A.2d 77 (1977); 66 *Opinions of the Attorney General* 242 (1981). In particular, the starting point for determining a corporation's Maryland tax base is its federal taxable income. *Comptroller v. Gannett Co., Inc.*, 356 Md. 699, 705, 741 A.2d 1130 (1999); *Celanese Corp. v. Comptroller*, 60 Md. App. 392, 397, 483 A2d 359 (1984) (Maryland law imposes tax on amount determined to be corporation's taxable income under Internal Revenue Code).

Therefore, our analysis must begin with the concept of "taxable income" under the Internal Revenue Code.

With certain exceptions not relevant here, federal taxable income of a corporation is calculated in two steps. First, and most importantly, all accretions of wealth received, generated, or acquired by the corporation during the corporation's annual tax year, and over which the corporation has complete dominion, are totaled. The annual aggregation of wealth accumulated during the tax year is termed "gross income" and includes "income from whatever source derived." 26 U.S.C. §61; 26 C.F.R. §1.61-1(a). The catch-all phrase, "from whatever source derived," was used by Congress to exert "the full measure of its taxing power" and covers all realized accessions to wealth, regardless of source, unless specifically excluded by statute. *Commissioner v. Kowalski*, 434 U.S. 77, 82 (1977); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429-30 (1955); *Simmons v. United States*, 308 F.2d 160, 168 (4th Cir. 1962); Joseph M. Dodge, *The Story of Glenshaw Glass*, *in* Tax Stories 30 (Paul L. Caron ed., 2003).

In the second step, gross income is reduced by subtracting certain deductions. 26 U.S.C. §63. These deductions are authorized by section 63 and enumerated in 26 U.S.C. §§161 through 199. Common deductions for corporations include compensation paid to officers and workers, expenses for repairs and maintenance, taxes, licenses, depreciation and depletion, and advertising. The result of this subtraction from gross income is referred to as the corporation's "taxable income." 66 *Opinions of the Attorney General* 242.

### B.   The Maryland Income Tax Law

As explained above, the starting point for determining a corporation's Maryland income tax liability is the corporation's federal taxable income. *Comptroller v. Gannett Co., Inc.*, 356 Md. at 705; *Celanese Corp. v. Comptroller*, 60 Md. App. at 397. Under Maryland law, the corporation's federal taxable income is used as the Maryland tax base, and then is modified by adding to or subtracting from it certain items specified in the income tax chapter of the Tax-General article. Annotated Code of Maryland, Tax General Article ("TG"), §10-304(1).

The prescribed "addbacks" and "subtractions" applied to the corporation's federal taxable income are specifically enumerated in TG §§10-305 through 10-308. The figure resulting from the modification of the corporation's federal taxable income by the

Maryland addbacks and subtractions is the corporation's "Maryland modified income." TG §10-304(1). Maryland modified income is defined as the corporation's Maryland taxable income, TG §1-301, and the State income tax is imposed upon the corporation's Maryland taxable income, TG §10-102.

## III

### Analysis

The sweeping and all-inclusive language of the Internal Revenue Code's definition of "gross income" clearly includes funds received from the federal government in the form of a federal grant, so long as the corporation obtains complete dominion over the proceeds of the grant. *Bailey v. Commissioner*, 88 T.C. 1293, 1301-02 (1987), citing *Baboquivari Cattle Co. v. Commissioner*, 135 F.2d 114, 115 (9th Cir. 1943); *Lykes Bros. S.S. Co. v. Commissioner*, 126 F.2d 725, 727 (5th Cir. 1942); *Dubay v. Commissioner*, T.C. Memo. 1979-418 (1979); *Harding v. Commissioner*, T.C. Memo. 1970-179 (1970); *Driscoll v. Commissioner*, T.C. Memo. 1944-021, *aff'd in part and rev'd in part on unrelated issues*, 147 F.2d 493 (5th Cir. 1945); *see* Rev. Rul. 84-67, 1984-1 C.B. 28. Federal grants and subsidies of all types received by individuals and corporations, unless specifically exempted by statute, are included in gross income. *Id.* Thus, federal soil conservation aid, postal shipping subsidies, a dam construction grant, Great Plains Conservation Program payments, and forestry cost-sharing incentives, all have been held taxable to the recipients. *Baboquivari Cattle Co. v. Commissioner*, 135 F.2d at 115; *Lykes Bros. S.S. Co. v. Commissioner*, 126 F.2d at 727; *Dubay v. Commissioner*, T.C. Memo. 1979-418; *Harding v. Commissioner*, T.C. Memo. 1970-179; *Driscoll v. Commissioner*, T.C. Memo. 1944-021; Rev. Rul. 84-67. The federal Smart Grid grant closely resembles and fits comfortably within the range of federal subsidies and grants described in the cited cases.

Only if the Smart Grid matching grant were to be encumbered by such conditions as would render it not within the Maryland public utility's control, would the grant be excluded from the corporation's gross income. *Bailey v. Commissioner*, 88 T.C. at 1301-02, citing *Glenshaw Glass*, 348 U.S. at 431. In this regard, the United States Tax Court has held that a federal historical "facade grant" was *not* with the dominion and control of a taxpayer-recipient when the grant was paid directly to a contractor selected by the grantor agency, in an amount of no prior knowledge to the recipient, and that required

a reciprocal 30-year indenture and easement by the grant recipient in favor of the grantor agency to insure future compliance with the terms of the grant. *Bailey v. Commissioner*, 88 T.C. at 1295-96. On these unique and rather extreme facts, the Tax Court concluded that the taxpayer lacked sufficient dominion and control over the proceeds of the grant to require the funds to be included in his gross income. *Bailey*, 88 T.C. at 1301.

There are no remotely similar restrictions in the Smart Grid matching grant program. Upon award of the grant, the recipient corporation must simply use the funds for the Smart Grid investment specified in the application. *See* 42 U.S.C. §17386(b)(3). Consequently, we conclude that the Maryland public utility would exercise dominion and control over the expected Smart Grid matching grant.

Nor does the Internal Revenue Code contain any exemption from gross income for the Smart Grid matching grants. *See* 26 U.S.C. §§63, 161-199.[1] Likewise, the implementing statutes themselves, EISA and ARRA, contain no provisions excepting or exempting the matching grants from gross income. Therefore, the Smart Grid matching grants are includible in the corporation's gross income in the year of receipt.

---

[1] There is, however, a provision for accelerated depreciation of Smart Grid equipment. In section 306 of the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765, Congress amended section 168 of the Internal Revenue Code to permit depreciation of "qualified smart electric grid systems" on an accelerated basis. *See* 26 U.S.C. §168(e)(3)(D)(iv) (2006 ed. Supp. II 2008). Thus, once the Smart Grid equipment were placed in service, the Maryland public utility might be able to depreciate it on an accelerated schedule. We express no opinion concerning qualification of the Maryland public utility's Smart Grid equipment for accelerated depreciation under this provision.

It is also worth noting that, regardless whether this particular Smart Grid equipment would qualify for accelerated depreciation under section 168, as amended, the inclusion of such equipment in the accelerated depreciation provision strongly indicates that Congress assumed that the Smart Grid matching grants would be included in gross income. It would be very unusual for Congress to provide tax preference treatment, such as accelerated depreciation, for an item not included in the taxpayer's gross income.

Similarly, neither of the Maryland statutes enumerating and authorizing subtractions from federal taxable income contains any provision concerning federal grants in general or the Smart Grid matching grants in particular. *See* TG §§10-307, 10-308. As a result, the company's Maryland taxable income must include any funds received from the Smart Grid matching grant, if and when received. The Maryland corporate income tax then will be imposed on that amount.

As a result, we can state with a high degree of confidence that any Smart Grid matching grant received by the Maryland public utility must be included in the company's federal gross income and that no federal exemptions or exclusions for such a grant would remove it from the company's federal taxable income. Furthermore, there exist no Maryland laws that would authorize subtraction of the grant from the company's Maryland modified income. Therefore, Maryland income tax would be imposed upon the full amount of the grant received by the company.

### IV

### Conclusion

For the reasons stated, it is our opinion that a Smart Grid Investment Matching Grant received by a Maryland public utility would be subject to income tax in Maryland, in the year of receipt.

Douglas F. Gansler
*Attorney General*

Michael J. Salem
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions & Advice*