*A+ Government Solutions, LLC, et al. v. Comptroller of Maryland*
No. 466, Sept. Term 2021
Opinion by Leahy, J.

**Income Tax > Pass-Through Entities**

Maryland Code (1988, 2016 Repl. Vol.), Tax-General Article ("TG"), § 10-102.1(c)(1) states that pass-through entity income tax "shall be treated as a tax imposed on the nonresident or nonresident entity members that is paid on behalf of the nonresidents or nonresident entities by the pass-through entity." In other words, "the income of [a pass-through entity] 'passes through' and is attributed to its [members] for purposes of the Maryland income tax law." *Md. State Comptroller of Treasury v. Wynne*, 431 Md. 147, 158 (2013) (referring specifically to S corporations but citing to § 10-102.1), *aff'd*, 575 U.S. 542 (2015).

**Income Tax > Disregarded Entities > Classification**

Under federal tax law, an LLC with only a single member may choose whether "to be classified as an association or to be disregarded as an entity separate from its owner." 26 C.F.R. § 301.7701-3(a). Unless a single-member LLC chooses otherwise, the default position is that it will be disregarded—in other words, it will not be regarded as an entity separate from its owner. 26 C.F.R. § 301.7701-3(b)(1).

**Income Tax > Disregarded Entities**

If an entity is disregarded under federal law, then it is also disregarded under Maryland law. Maryland Code (1988, 2016 Repl. Vol.), Tax-General Article, § 10-819(a), (c).

**Income Tax > Pass-Through Entities**

The pass-through entity income tax only applies to nonresident taxable income "[t]o the extent included in federal adjusted gross income." Maryland Code (1988, 2016 Repl. Vol.), Tax-General Article, § 10-210(b).

**Income Tax > Federal Law > Taxation of Native American Tribes**

In the absence of any clear authority to the contrary, or any arguments to the contrary from the parties to this case, we adopt the United States Tax Court's persuasive reasoning in *Uniband, Inc. v. Comm'r of Internal Revenue*, 140 T.C. 230 (T.C. 2013) that Congress's silence on federal taxation of Native American tribes is "deliberate," and that Native American tribes are not subject to federal income tax.

**Income Tax > Federal Law > Taxation of Native American Tribes > Tribal Corporations**

We find the Tax Court's reasoning in *Uniband, Inc. v. Comm'r of Internal Revenue*, 140 T.C. 230 (T.C. 2013) persuasive and, accordingly, we adopt its conclusion that section 17 corporations are not subject to federal income tax. *Id.* at 263.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0466

September Term, 2021

_____

A+ GOVERNMENT SOLUTIONS, LLC, ET AL.

v.

COMPTROLLER OF MARYLAND

_____

> Kehoe,
> Leahy,
> Woodward, Patrick L.
>    (Senior Judge, Specially Assigned),
>
> JJ.

_____

Opinion by Leahy, J.

_____

Filed: March 31, 2022

* Ripken, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Chickasaw Nation is a federally recognized Native American tribe.[1] Chickasaw Nation Industries, Inc. ("CNI"), is a federally chartered corporation created and incorporated in 1996 under the Oklahoma Indian Welfare Act, 25 U.S.C. §§ 5201-5210 ("OIWA"), commonly referred to as a "section 17 corporation" after the parallel provision in section 17 of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 5101-5143. The appellants are a collection of six limited liability companies (the "CNI Subsidiaries"),[2] each wholly owned by CNI Government, LLC,[3] which in turn is owned by CNI. The CNI Subsidiaries, as well as CNI Government, are treated as disregarded entities for income tax purposes. The parties have stipulated that the CNI Subsidiaries "derive all, or substantially

---

[1] There are a variety of terms that have historically been used to refer to the people indigenous to the land now comprising the continental United States. *E.g.*, Dacoda McDowell-Wahpekeche, *Which is Correct? Native American, American Indian or Indigenous?* The Oklahoman, https://www.oklahoman.com/story/special/2021/04/22/what-do-native-people-prefer-called/4831284001/ (last updated April 23, 2021). As described by Professor Raymond Orr, chair of the Native American Studies department at the University of Oklahoma, "'American Indian' is probably the most long-standing term, or 'Indian,' but it is also a misnomer" arising from Christopher Columbus's mistaken belief that he had landed in India. *Id.* "Native American" is a term that arose "mostly from the 1970s" that was intended to parallel other terms such as "Irish American" or "Asian American" without the inaccuracy of the term "Indian." *Id.* The term "indigenous" is also used, although it "does not apply to just Native Americans," but also "to other native groups like Alaskan Natives and Native Hawaiians." *Id.* In this opinion we generally use the term Native American, but we leave intact other sources that use the term "Indian."

[2] Each of the CNI Subsidiaries is a limited liability company that was formed under the laws of another state. Four of them—CNI Ancillary Services, LLC, CNI Technical Services, LLC, Chickasaw Advisory Services, LLC, and CNI Federal Services, LLC—are Oklahoma LLCs. The remaining two—CNI Professional Services, LLC, and A+ Government Solutions, LLC—are LLCs of Texas and Delaware, respectively. The CNI Subsidiaries derive all, or substantially all of their income from the performance of various service contracts with the federal government.

[3] CNI Government, like a majority of the CNI Subsidiaries, is an Oklahoma LLC.

all of their income from the performance of various services contracts with the federal government."

On August 18, 2014, the Comptroller of the Treasury issued notices of tax assessment against each of the CNI Subsidiaries for tax year 2012 after determining that they were required to pay pass-through entity income tax ("PTE income tax"). The CNI Subsidiaries challenged this determination, but the Tax Court and the Circuit Court for Anne Arundel County both affirmed the Comptroller's assessment of PTE income tax against them.

On appeal to this Court, the CNI Subsidiaries present three questions for our review, which we have rephrased and recast as two:[4]

1. Did the Tax Court err by affirming the Comptroller's assessment of PTE income tax against the CNI Subsidiaries even though CNI Government, LLC, their sole owner, is, in turn, owned by CNI, a federally chartered tribal corporation?

---

[4] The CNI Subsidiaries state their questions presented as follows:

"1. Did the Maryland Tax Court err as a matter of law in affirming pass-through entity income tax on the CNI Subsidiaries and on CNI Government, LLC which are disregarded entities solely owned by a federally recognized tribal corporation that is 'not subject to' income tax?

2. Did the Maryland Tax Court err as a matter of law in ruling that the CNI Subsidiaries owe Maryland pass-through income tax even though the CNI Subsidiaries do not meet the statutory or regulatory definition of a nonresident pass-through entity with nonresident pass-through income?

3. Did the Maryland Tax Court err as a matter of law in ruling that the Comptroller can force CNI, who was not a party to the case, to prepare federal income tax returns when the Internal Revenue Service has determined that CNI has no obligation to prepare such returns?"

2

2. Did the Tax Court err by ruling that CNI, a non-party, is required to prepare a federal income tax return to calculate its Maryland taxable income?

We hold that the Tax Court erred in its determination that the CNI Subsidiaries are subject to PTE income tax. As Maryland Code (1988, 2016 Repl. Vol.), Tax-General Article ("TG"), § 10-102.1(c)(1) provides, the PTE income tax is not imposed on the pass-through entity itself (here, the CNI Subsidiaries and CNI Government)—rather, it is "treated as a tax imposed on the nonresident [owner]" of the pass-through entity (here, CNI) "that is paid on behalf of the nonresidents . . . by the pass-through entity." Accordingly, the Comptroller's ability to collect PTE income tax from the CNI Subsidiaries depends on whether CNI's income is taxable under Maryland law. And because we use the federal calculation of taxable income as the base for PTE income tax, whether CNI is subject to Maryland income tax depends on whether any of its income is taxable at the federal level.[5]

Under 26 C.F.R. § 301.7701-1(a)(3), section 17 corporations like CNI "are not recognized as separate entities for federal tax purposes," and the corporations therefore receive the same federal tax treatment as the tribes that own them. *Uniband, Inc. v. Comm'r of Internal Revenue*, 140 T.C. 230, 262-63 (T.C. 2013). Native American tribes are not subject to federal income tax; consequently, neither are federally chartered tribal

---

[5] It is common for states to use federal definitions of income as the starting point for the calculation of their state income taxes. Ruth Mason, *Delegating Up: State Conformity with the Federal Tax Base*, 62 Duke L.J. 1267, 1275 (2013). Thirty-five states, including Maryland, use this approach. *Id.* Only six states calculate the base for their state income taxes in other ways, *id.* at 1278, and the remaining nine states do not have an individual income tax, *id.* at 1275.

corporations like CNI. *Id.* at 245, 263. Thus, because none of CNI's income is taxable under federal law, and Maryland has elected to rely on the federal calculation of taxable income, we hold that none of CNI's income is taxable under Maryland law, regardless of whether that tax is assessed directly or if it is assessed via CNI Government and the CNI Subsidiaries as pass-through entities. Accordingly, we reverse the judgment of the Tax Court affirming the assessment of pass-through entity income tax against the CNI Subsidiaries and requiring CNI to complete a federal income tax return.

## BACKGROUND[6]

As expressed in the parties' submissions to the Tax Court, the organizational flow chart for CNI and its subsidiaries is as follows:

Chickasaw Nation (Indian Tribe)
↓
Chickasaw Nation Industries, Inc. (CNI)
(Federally chartered tribal corporation
of CNI formed under OIWA)
↓
CNI Government, LLC (wholly owned by CNI)
↓
CNI Subsidiaries (all wholly owned by CNI Government)
CNI Ancillary Services, LLC (Oklahoma)
CNI Technical Services, LLC (Oklahoma)
[Chickasaw] Advisory Services, LLC (Oklahoma)
CNI Federal Services, LLC (Oklahoma)
CNI Professional Services, LLC (Texas)
A+ Government Solutions, LLC (Delaware)

The Operating Agreements of the CNI Subsidiaries and of CNI Government all expressly provide that each respective CNI Subsidiary "shall be treated as a disregarded

---

[6] In the Tax Court, the parties jointly submitted a statement of stipulated facts.

4

entity for income tax purposes." As the parties stipulated before the Tax Court, "neither the CNI Subsidiaries nor CNI Government . . . have ever made the 'check the box' election to be treated as corporations on federal income tax returns."

On June 24, 2003, Cathy Bird, an Indian Tribal Government Specialist with the United States Internal Revenue Service ("IRS"), sent a letter to a CNI consultant stating that income earned by an LLC "that has an Indian Tribe incorporated pursuant to the [OIWA] as the LLC's only member is non-taxable." The letter further explained that "a single member LLC is either classified as a corporation or it is disregarded," and stated that if an Oklahoma LLC does not affirmatively elect to be treated as a corporation, it "will be disregarded and treated as a division or branch of the tribal corporation for federal income tax purposes."

Just over a decade later, on April 16, 2014, each of the CNI Subsidiaries filed a Maryland corporate income tax return for tax year 2012. Each CNI Subsidiary's return reported that it had federal taxable income in 2012. Tom Leydorf, executive vice president of CNI, later stated in an affidavit that these tax returns were filed "mistakenly" and that it had been "erroneous[]" for the CNI Subsidiaries to report that they had federal taxable income.

On August 18, 2014, the Comptroller issued Corporation Income Tax Notices for each of the CNI Subsidiaries for tax year 2012, which asserted that each of the CNI

5

Subsidiaries owed Maryland income taxes.[7]  One month later, on September 23, 2014, the Comptroller issued final notices of tax assessment for the CNI Subsidiaries for tax year 2012.

The CNI Subsidiaries filed administrative appeals of the September 23, 2014 notices of tax assessment on October 15, 2014.  On January 15, 2015, while the appeals were still pending, the CNI Subsidiaries filed amended tax returns for tax year 2012, each reporting zero federal taxable income.

**Comptroller's Final Determinations**

The Comptroller's designated hearing officer held a hearing on the administrative appeals on February 26, 2015.  At this hearing, counsel for the CNI Subsidiaries argued that the Comptroller's assessments were made in error because the CNI Subsidiaries had no federal taxable income, and, accordingly, no Maryland taxable income.  The following exchange ensued:

| [HEARING OFFICER]: | Your position is that . . . if an entity or individual does not have a federal income tax filing requirement.  In Maryland it starts their return with the federal information.  If the person doesn't have a federal requirement, then Maryland is not going to be able to tax them?  Is that generally correct? |
|---|---|
| [COUNSEL]: | Yes, I would state it this way.  That if you are an entity like these particular, like [a] tribal corporation.  You are not subject to federal income tax. |

---

[7] The notices stated that CNI Professional Services owed $57,574.43; CNI Ancillary Services owed $2,962.42; CNI Technical Services owed $12,018.99; CNI Information Technology owed $137,863.27; Chickasaw Advisory Services owed $83,347.04; and A+ Government Solutions owed $76,349.66.

| [HEARING OFFICER]: | Absolutely and I agree with you. |
|---|---|

| [COUNSEL]: | It's not that they're exempt. Just not subject to the tax. So it would be our position that these entities have zero federal taxable income. So now, does that mean that Maryland cannot tax them? I don't know the answer to that . . . . |
|---|---|
| | Maryland needs the statutory authority to basically say, you're not an entity or subject to federal taxation, but you earned income in Maryland that we want to tax. Maryland has to have specific statutory authority to do that. They don't have that. |

Counsel for the CNI Subsidiaries also clarified that the CNI Subsidiaries were not arguing that Maryland tax liability depends on whether the taxpayer is required to file a federal tax return; rather, it depends on whether the taxpayer is subject to federal income tax in the first place:

| [HEARING OFFICER]: | The parallel that pops into my mind is, and I'm just using 2014 numbers because that's the first thing that came into my mind, is for 2014, you know the federal filing threshold for an individual is $11,150. The state filing threshold is lower. It's $9,750. So . . . I was kind of wondering what your opinion was because let's say someone makes $10,000. They clearly, by the IRS' own guidelines do not have any obligation to file a federal income tax return. Because of the starting point of the state return, is the federal [adjusted gross income], would you . . . say that, that individual then will not be subject to the Maryland tax absent specific statutory authority? |
|---|---|

| [COUNSEL]: | I don't know that I would necessarily say that. That particular individual? They're subject to |
|---|---|

federal income tax. They just fall within the argument that they don't have to file a return.

At the conclusion of the hearing, the hearing officer took the matter under advisement.

On July 24, 2017, the hearing officer reached a decision on the CNI Subsidiaries' administrative appeals, issuing each CNI Subsidiary a substantively identical "Notice of Final Determination." The hearing officer agreed with the CNI Subsidiaries that CNI is not subject to federal income tax but found "no reason to believe" that the CNI Subsidiaries benefited from CNI's federal tax immunity. He explained that:

> [T]he taxpayer and CNI are distinct legal entities. While CNI was incorporated under the [Oklahoma Indian Welfare] Act, the taxpayer was organized on May 2011 under the laws of the State of Oklahoma. The taxpayer is not afforded immunity from federal income tax simply by virtue of CNI's sole ownership; the Internal Revenue Service . . . has made clear that "a corporation organized by an Indian tribe under state law is subject to federal income tax."

Then the hearing officer set out the Comptroller's pass-through entity theory under which, it was claimed, "nonresident taxable income" earned by the CNI Subsidiaries in Maryland was taxable:

> Maryland law states that this tax shall be treated as a tax on the taxpayer's non-resident entity member, which is paid on CNI's behalf by the taxpayer. As such, even though the taxpayer is not exempt from Maryland tax, it is necessary to examine whether CNI itself is subject to Maryland tax.

> At the onset, it is clear that . . . CNI is not protected from state income tax by CNI's formation under the [OIWA]; both Congress and the Supreme Court have affirmed the states' authority to tax income generated outside of tribal lands.

> Under Maryland law, the Maryland taxable income of a corporation is "its Maryland modified income as allocated to the State," which is for our purposes defined as "the corporation's federal taxable income for the taxable

8

year as determined under the Internal Revenue Code and as adjusted under this Part II of this subtitle."

The hearing officer then addressed the CNI Subsidiaries' point that CNI is under no obligation to complete or file a federal return by stating that, "even if true, this fact alone does not mean that CNI has a zero federal taxable income as defined in Maryland law." He explained that the Maryland filing instructions all make clear that "'federal taxable income' does not mean, as the taxpayer appears to suggest, the amount of income on which a corporation actually pays federal income tax. Rather, it means something far more concrete: as explained in *Katzenburg* [*v. Comptroller of the Treasury*, 263 Md. 189 (1971)] it is a 'figure developed by the federal return.'"[8]

The Notices of Final Determination also updated the earlier notices of tax assessment to reflect (1) the interest that had accrued, and (2) that the Comptroller had intercepted over $255,000 in payments from the federal government to the CNI Subsidiaries to satisfy their alleged tax liability.[9]

---

[8] Although the parties sometimes use the term "federal taxable income," the PTE income tax is in fact based on "federal adjusted gross income." TG §§ 10-102.1(b), 10-210. Both quantities are calculated by subtracting certain deductions from gross income. 26 U.S.C. §§ 62-63.

[9] The Notices of Final Determination asserted that the CNI Subsidiaries owed the following amounts:

(1) CNI Technical Services, LLC was assessed $10,947.79 in taxes with $1,657.15 in interest and a penalty of $1,094.78, for a total of $13,699.72;

(2) CNI Ancillary Services, LLC was assessed $2,282.66 in taxes with $619.93 in interest and a penalty of $230.64, for a total of $3,133.23;

(Continued)

9

On August 22, 2017, the CNI Subsidiaries filed timely appeals from the Comptroller's final determinations to the Maryland Tax Court.

**Maryland Tax Court Decisions**

After the Tax Court consolidated the six cases at their request, the CNI Subsidiaries and the Comptroller each moved for summary judgment. The CNI Subsidiaries argued that they "have $0 federal taxable income because they are disregarded entities whose owner, a federally chartered trial corporation, is 'not subject to federal income tax' under published IRS authority." The CNI Subsidiaries contended that it is "obvious[]" that if an entity is not subject to federal income tax, then its federal taxable income is $0.

The Comptroller's motion for summary judgment acknowledged that CNI "is not subject to federal income tax and is not required by federal law to file federal income tax

---

(3) Chickasaw Advisory Services, LLC was assessed $48,814.00 in taxes with $11,805.59 in interest and a penalty of $4,930.71, for a total of $65,550.30;

(4) CNI Information Technology, LLC was assessed $106,073.00 in taxes with $60,274.91 in interest and a penalty of $10,714.41, for a total of $177,062.32;

(5) A+ Government Solutions, Inc. was assessed $58,062.90 in taxes with $14,691.31 in interest and a penalty of $5,864.94, for a total of $78,619.15; and

(6) CNI Professional Services, LLC was assessed $44,365.74 in taxes with $11,154.58 in interest and a penalty of $4,481.39, for a total of $60,001.71.

The Notices of Final Determination also stated the amounts of money that had been intercepted out of payments from the federal government to the CNI Subsidiaries. These intercepts satisfied the full amount that the Comptroller asserted was owed by CNI Technical Services, CNI Ancillary Services, Chickasaw Advisory Services, and CNI Professional Services, leaving them with no debt owed. The Comptroller did not intercept any payments to CNI Information Technology, leaving it still in debt, according to the Comptroller, for the full amount of $177,062.32. Finally, the Comptroller intercepted $78,588.12 in payments to A+ Government Solutions, leaving it still in debt for $31.03.

10

returns." However, the Comptroller argued that CNI's status as not subject to federal income tax merely meant that it has no federal tax *liability*, and that it still has federally taxable income. The Comptroller's motion insisted that the CNI Subsidiaries were "flatly wrong" to suggest that "if an entity is not 'subject to federal taxation' its federal taxable income is necessarily zero."

On November 30, 2018, the Tax Court issued an order granting the Comptroller's motion for summary judgment and denying CNI Subsidiaries' motion. Upon request by the CNI Subsidiaries, the Tax Court withdrew its order so that it could be reissued with a statement of the grounds for its decision. In its revised order, issued on January 17, 2019, the Tax Court stated:

> The *Federal taxable income* is the measure the Maryland corporation income tax uses as the starting point for calculating a corporation's Maryland tax liability. Federal taxable income[] does not mean, as the [CNI Subsidiaries] suggest, the amount of income on which a corporation actually pays federal income tax. It is simply a figure developed by the federal return.
>
> The taxability of individuals and corporations in the state of Maryland does not turn on whether a taxpayer actually completed a federal return; Maryland is concerned with the figures calculated by the rules of the return, not the physical act of completion. While CNI may not be obliged to complete a Form 1120 for the federal government, CNI and its subsidiaries are clearly required to do so in order to complete the Maryland return. The CNI Subsidiaries have Maryland taxable income liability and as single member LLCs/disregarded entities, do not receive the same tax treatment as their nonresident owner.
>
> The [c]ourt denies [the CNI Subsidiaries'] motion for summary judgment and grants the Comptroller's cross-motion for summary judgment. The tax assessments against the [CNI Subsidiaries] are hereby affirmed.

11

**Judicial Review and Remand**

The CNI Subsidiaries filed a petition for judicial review of the Tax Court's decision in the Circuit Court for Anne Arundel County on February 6, 2019. The parties filed memoranda of law that largely mirrored the arguments made before the Tax Court. Additionally, the CNI Subsidiaries focused significantly on their status as "disregarded entities," arguing that because the CNI Subsidiaries are disregarded as entities separate from their owner, they have no taxable income and therefore have no Maryland income tax liability. They also pointed out that the income tax return instructions issued by the Comptroller established that disregarded entities are not required to file pass-through entity income tax returns. The Comptroller responded that this was a new argument and that it was not preserved because it had not been raised in the Tax Court.

In a hearing on July 1, 2019, the circuit court determined that additional factual findings were required before it could reach a decision on the merits of the case. Specifically, the court ordered that the case be remanded to the Tax Court for "factual findings regarding the registration of . . . all of the entities in this case and their respective tax obligations under Maryland law."

On remand, the parties filed a supplemental statement of stipulated facts addressing the registration status of the CNI Subsidiaries and associated entities. The parties stipulated that CNI and CNI Government did not conduct any business in Maryland in 2012, nor were they registered to do so. Regarding the CNI Subsidiaries, the parties stipulated that all six subsidiaries conducted business in Maryland in 2012. However, only four of them—CNI Ancillary Services, Chickasaw Advisory Services, CNI Information Technology, and CNI

12

Professional Services—were qualified or registered to do so during 2012. CNI Technical Services and A+ Government Solutions were not qualified or registered to do business in Maryland during 2012. Finally, the parties stipulated that neither the CNI Subsidiaries nor CNI Government are S corporations or partnerships.[10]

The Tax Court held a hearing on September 23, 2020. At this hearing, counsel for the Comptroller raised the question of whether CNI and CNI Government were necessary parties to the case. Counsel for the Comptroller argued that they were not necessary because "it is in fact CNI Government, LLC's tax under TG Section 10-102.1(d)," but "the tax is collected from the subsidiaries who did business in Maryland." Counsel for the CNI Subsidiaries did not respond to this argument.

Following this hearing, the Tax Court issued a written opinion and order on October 8, 2020. The Tax Court found that the CNI Subsidiaries "were treated as disregarded entities for income tax purposes and did not elect to be treated as corporations for federal income tax purposes," and that "[e]ach of the CNI Subsidiaries in 2012 [was] a non-resident pass-through entity and each has a single member (CNI Gov't) that was neither

---

[10] "A 'Subchapter S corporation' or 'S corporation' is a company that is able, under federal tax law, to enjoy the benefits of incorporation but avoid the [double] taxation of both the corporate entity and its shareholders. . . . Thus, with few exceptions, the corporation does not pay tax at the corporate level, but its earnings 'pass through' to the shareholders who must report profits or losses on their federal and state individual income tax returns." *Walker v. Grow*, 170 Md. App. 255, 277-78 (2006) (quotation marks and citations omitted); *see also* 26 U.S.C. §§ 1363, 1366.

registered to do business in Maryland nor a resident of Maryland."[11]  Accordingly, the Tax

Court held that "an income tax at the rate of 8.25% is imposed on the CNI [S]ubsidiaries'

nonresident taxable income for 2012."

The CNI Subsidiaries petitioned for judicial review of the Tax Court's October 8,

2020 order on November 5, 2020.  Following a hearing on May 3, 2021, the circuit court

affirmed the Tax Court's order, finding that "it was not . . . erroneous as a matter of law"

and "was supported by substantial evidence that appeared in the record."  This timely

appeal followed.

## STANDARD OF REVIEW

"The scope of our review is substantially the same as that of the circuit court.  That

is, we review the Tax Court's decision and not the decision of the circuit court."

*Comptroller of Treasury v. Colonial Farm Credit*, 173 Md. App. 173, 177 (2007) (quoting

*Pleasants Investments Ltd. P'ship v. State Dept. of Assessments & Tax'n*, 141 Md. App.

481, 489 (2001)).  We defer to the Tax Court's factual determinations as long as they are

---

[11] The Tax Court's finding that CNI Government was "neither registered to do business in Maryland nor a resident of Maryland" is relevant because if that were not the case, then the CNI Subsidiaries might be subject to an exception to the PTE income tax contained in TG § 10-102.1(e).  The statute states:

> The tax imposed under subsection (b) of this section does not apply with respect to the distributive share or pro-rata share of a member that is itself a pass-through entity formed under the laws of the State or qualified by or registered with the Department of Assessments and Taxation to do business in the State.

TG § 10-102.1(e)(1)(i).  This exception is still in effect, but it has been moved to TG § 10-102.1(f)(1)(i).

14

supported by substantial evidence in the record. *Id.* We give "great weight" to the Tax Court's legal conclusions, but only to the extent that they are "premised upon an interpretation of the statutes that the agency administers and the regulations promulgated for that purpose." *Frey v. Comptroller of Treasury*, 422 Md. 111, 138 (2011). We give no deference to the Tax Court's legal conclusions when they are "necessarily premised upon the 'application and analysis of caselaw,'" or when the decision "require[s] the application and analysis of cases interpreting the United States Constitution [or] the Maryland Constitution and Declaration of Rights." *Id.*

## DISCUSSION

### A.    Parties' Contentions

Citing to IRS Revenue Rulings 94-16 and 67-284, the CNI Subsidiaries contend that Native American tribes like the Chickasaw Nation are "not subject to federal income tax." Similarly, quoting from Revenue Ruling 94-65, the CNI Subsidiaries contend that as a tribal corporation organized under the OIWA, CNI "is not subject to federal income tax on income earned in the conduct of commercial business **on or off the tribe's reservation.**" (Emphasis added in appellant's brief).

The CNI Subsidiaries argue that Maryland has adopted the same income tax exemption for Native American tribes and tribal corporations recognized by the federal government. In their view, an entity is subject to Maryland income tax "if—and only if— it has federal taxable income." Relying on *Comptroller of Treasury Income Tax Div. v. Am. Satellite Corp.*, 312 Md. 537, 545 (1988), they assert that this principle is an extension of the "conformity doctrine," which "bring[s] the State taxation system in conformity with

15

the federal scheme." Therefore, because CNI is not subject to federal income tax, the CNI Subsidiaries contend that CNI is not taxable under Maryland law. In the CNI Subsidiaries' view, this also means that the CNI Subsidiaries are not taxable: they assert that "neither the Tax Court nor the Comptroller cite to any statute, regulation, case, or other authority to justify the unsupported and utterly incorrect notion that a disregarded entity can be subject to the Maryland pass-through entity tax where the sole owner of the taxed entity is [not] and never has been subject to tax." Additionally, the CNI Subsidiaries contend that Code of Maryland Regulations ("COMAR") 03.04.07.01B(7) defines "nonresident taxable income" only as applied to partnerships, S corporations, and LLCs or business trusts that are taxed as partnerships. Because the definition does not expressly include disregarded entities such as single-member LLCs, the CNI Subsidiaries argue that the regulation was intended to exclude disregarded entities from the PTE income tax.

The CNI Subsidiaries appear to argue that disregarded entities and pass-through entities are mutually exclusive categories under Maryland tax law. They assert that "the Comptroller has clearly and consistently recognized in its guidance to taxpayers that a disregarded entity is not the same as a pass-through entity and need not file tax returns." They cite the Comptroller's Administrative Release No. 25 in support of this contention and note that the Release "breaks up discussion of the Maryland income tax treatment of LLCs into 'general' and into 'taxation of LLCs having nonresident members.'" The CNI Subsidiaries further assert:

> In the general category, the Release says: ". . . if an LLC has elected to be classified as a disregarded entity for federal income tax purposes, then

16

the LLC will be treated as a disregarded entity for Maryland income tax purposes and will not have to file a separate Maryland income tax return."

In contrast, the [R]elease contains a very different message in the separate nonresident member section: "[i]f an LLC is treated as a partnership for federal income tax purposes, it is subject to the tax reporting requirements and pass-through entity nonresident member tax applicable to ordinary partnerships having nonresident partners." This connotes a specific and clear difference between nonresident pass-through entities and disregarded entities, as the Comptroller's Release only references nonresident members "treated as a partnership" and never once mentions disregarded entities in that separate section.

(Cleaned up).

The CNI Subsidiaries also challenge the language in the Tax Court's pre-remand order indicating that CNI is required to prepare a federal income tax return. They argue that the Comptroller has "no basis or authority" to require CNI to complete a federal return because "the IRS has flatly and explicitly excluded CNI from federal income tax return requirements."

In response to these arguments, the Comptroller persists that the "CNI Subsidiaries are subject to Maryland's income tax on pass-through entities." The Comptroller asserts that "[e]ach of the CNI Subsidiaries is a limited liability company, and therefore a 'pass-through entity.'" Because the CNI Subsidiaries have CNI Government as a member, and CNI Government was "neither formed under Maryland law nor registered or qualified to do business in Maryland," the CNI Subsidiaries have a member that is a nonresident entity. Therefore, under TG § 10-102.1, the Comptroller asserts that the CNI Subsidiaries are subject to the PTE income tax.

The Comptroller further disagrees with the CNI Subsidiaries' "attempt to engraft a limiting interpretation onto Tax-General § 10-210(b)" by arguing that the categories of income defined therein are limited to income included in federal adjusted gross income. The Comptroller contends that "[t]he CNI Subsidiaries' interpretive limitation makes no sense, however, given that § 10-210 excludes certain types of gross income received by nonresidents from income-generating activities carried on *outside the State*." (Emphasis in original). The Comptroller also argues that "the reference to 'federal adjusted gross income' in Tax-General § 10-210(b) is not intended to incorporate a new definition of 'nonresident' or a novel concept of 'federal adjusted gross income' into § 10-102.1. Instead, the cross-reference is used to describe what sources of income are to be included in 'nonresident taxable income.'"

The Comptroller also challenges the CNI Subsidiaries' reading of COMAR 03.04.07.01B(7). The Comptroller argues that the purpose of this regulation is to define how nonresident taxable income is allocated among the owners of multi-owner entities like partnerships and S corporations, not to limit the application of the tax to only those types of entities.

Because the CNI Subsidiaries derived income from doing business in Maryland, the Comptroller asserts that they, as other pass-through entities with nonresident owners, "must file an annual information return on Form 510." Relying on COMAR 03.04.07.03E, the Comptroller avers that CNI Government was also required to file an annual return.

Finally, the Comptroller argues that the "CNI Subsidiaries misconstrue the conformity doctrine." Most importantly, the Comptroller argues that an entity may have

18

federal adjusted gross income even if it has no federal income tax liability. The Comptroller suggests that federal adjusted gross income is simply a quantity calculated under federal law, and that the CNI Subsidiaries have federal adjusted gross income despite having no federal income tax obligations and not being federally required to file an income tax return.[12]

In reply, the CNI Subsidiaries insist that they are not pass-through entities. They claim that they are disregarded entities, and that they cannot be both disregarded entities and pass-through entities at the same time. The CNI Subsidiaries also argue that "the Comptroller stops too soon in concluding that CNI Government [] is the 'owner' of the CNI Subsidiaries." Because CNI Government is itself a disregarded entity with CNI as its sole owner, the CNI Subsidiaries assert that "one must move further up the chain to find

---

[12] The Comptroller also argues that this Court should decline to address the CNI Subsidiaries' contention that they have no nonresident taxable income. First, the Comptroller suggests that the CNI Subsidiaries have waived their argument because the argument was "not addressed to the Tax Court initially," but rather was first raised in the Tax Court on remand from the circuit court. In support, the Comptroller cites *Comptroller of Treasury v. Jalali*, 235 Md. App. 369, 388 (2018). In *Jalali*, we declined to address a party's argument because it was raised for the first time *before this Court on appeal*. *Id.* at 388-89. But here, as the Comptroller's brief acknowledges, the issue was first raised in the Tax Court, not on appeal to this Court. The two cases are not comparable.

Second, the Comptroller argues that the CNI Subsidiaries failed to preserve for our review the issue of whether the CNI Subsidiaries had nonresident taxable income because the Tax Court did not make explicit findings on that issue. We disagree. In its January 17, 2019 order, the Tax Court addressed this precise issue. The Tax Court ruled that "[f]ederal taxable income[] does not mean, as [the CNI Subsidiaries] suggest, the amount of income on which a corporation actually pays federal income tax. It is simply a figure developed by the federal return." Accordingly, the court affirmed the Comptroller's assessment of an 8.25% tax "imposed on the CNI Subsidiaries' nonresident taxable [income] which is allocable to Maryland."

19

the ultimate 'owner' or parent of the CNI Subsidiaries . . . which is CNI." Finally, the CNI Subsidiaries clarify that they "are not claiming they are 'immune' from Maryland taxation; instead they are 'not subject to' federal taxation as disregarded entities." They assert that "the Comptroller is mistaken in intimating that the CNI Subsidiaries are using 'common law sovereign immunity' to support their position. . . . Rather, the CNI Subsidiaries are using bedrock Maryland law on the conformity doctrine coupled with settled law on disregarded entities."

### B.    Analysis

Our analysis in this case is divided into three parts. First, we consider, under TG § 10-102.1(c)(1), on which entity the PTE income tax should actually be imposed. We conclude that the tax would have to be imposed on CNI, and that the tax would merely be collected from the CNI Subsidiaries on CNI's behalf. Second, we explain that the income tax depends on the taxpayer's (here, CNI's) federal adjusted gross income. Third, because CNI's taxability under Maryland law depends on whether it has any taxable income under federal law, we consider whether CNI's income is taxable under federal law. We conclude that it is not, because the federal income tax does not apply to Native American Tribes, and CNI shares in that status as a section 17 corporation.

### i.    *Who is the Tax Imposed on?*

We must first determine which entity is actually being taxed by the Comptroller before we can determine the tax liability, if any, in this case. Under § 10-102.1 of the Tax-General Article, the term "pass-through entity" means:

(i)    an S corporation;

20

(ii)    a partnership;

(iii)   **a limited liability company that is not taxed as a corporation under this title**; or

(iv)    a business trust or statutory trust that is not taxed as a corporation under this title.

TG § 10-102.1(a)(7) (emphasis added).

Section 10-102.1(b) imposes a tax on any pass-through entity that has "any member who is a nonresident of the State or is a nonresident entity," and had "any nonresident taxable income for the taxable year."  TG § 10-102.1(b).[13]

Significantly, TG § 10-102.1(c)(1) states that the pass-through entity income tax "shall be treated as a tax imposed on the nonresident or nonresident entity members that is paid on behalf of the nonresidents or nonresident entities by the pass-through entity."  *See also Frey v. Comptroller of Treasury*, 422 Md. 111, 127 (2011) (describing TG § 10-102.1 as "imposing State income tax on partnerships with nonresident partners and requiring such partnerships to pay that tax on behalf of such partners").  In other words, "the income of [a

---

[13] TG § 10-102.1(b) was revised in 2020 in ways that do not impact our analysis. 2020 Md. Laws ch. 641 (S.B. 523).  Today, it states:

(1)    Subject to paragraph (2) of this subsection, in addition to any other tax imposed under this title, a tax is imposed on each pass-through entity.

(2)    Each pass-through entity:

(i)    shall pay the tax imposed under paragraph (1) of this subsection with respect to the distributive shares or pro rata shares of the nonresident and nonresident entity members of the pass-through entity; or

(ii)   may elect to pay the tax imposed under paragraph (1) of this subsection with respect to the distributive shares or pro rata shares of all members of the pass-through entity.

21

pass-through entity] 'passes through' and is attributed to its [members] for purposes of the Maryland income tax law." *Md. State Comptroller of Treasury v. Wynne*, 431 Md. 147, 158 (2013) (referring specifically to S corporations but citing to § 10-102.1), *aff'd*, 575 U.S. 542 (2015).

Here, the CNI Subsidiaries' nonresident member is CNI Government. If this were a simpler case, the analysis would end here: the pass-through entity tax would be imposed on CNI Government as the only nonresident member of the CNI Subsidiaries, and the CNI Subsidiaries would pay the tax on CNI Government's behalf. But this is not a simple case, because CNI Government is also a disregarded entity. We explain.

In most situations, limited liability companies are treated as entities separate from their members. *See, e.g.*, Maryland Code (1975, 2014 Repl. Vol.), Corporations and Associations Article § 4A-301 (differentiating between the liability for obligations of an LLC and its members). However, under federal tax law, an LLC with only a single member may choose whether "to be classified as an association or to be disregarded as an entity separate from its owner." 26 C.F.R. § 301.7701-3(a). Unless a single-member LLC chooses otherwise, the default position is that it will be disregarded—in other words, it will not be regarded as an entity separate from its owner. 26 C.F.R. § 301.7701-3(b)(1). If this is the case, then the LLC, as a disregarded entity, files no federal income tax return of its own—instead, its gains and losses are included on its owner's tax return. *See id.* § 301.7701-2(a) (stating that the activities of a disregarded entity "are treated in the same manner as a sole proprietorship, branch, or division of the owner").

22

If the entity is disregarded under federal law, then it is also disregarded under Maryland law. TG § 10-819(a), (c) (stating that if an LLC "has only one member and it is disregarded as an entity separate from its member for federal income tax purposes," then it is not required to file its own income tax return and "the profit or loss of the limited liability company shall be reflected on the income tax return filed by the member of the limited liability company").[14]

Because CNI Government is disregarded as an entity separate from CNI, all of CNI Government's income is treated as if it were earned by CNI. 26 C.F.R. § 301.7701-3; TG § 10-819(a), (c). Consequently, when we look past the CNI Subsidiaries to impose a tax on their owner's nonresident income pursuant to TG § 10-102.1(c)(1), we are actually looking past all of CNI's disregarded subsidiaries (including CNI Government) to impose

---

[14] The full text of section 10-819 states:

(a) *Required.* — Each limited liability company as defined under Title 4A of the Corporations and Associations Article shall file an income tax return unless it has only one member and it is disregarded as an entity separate from its member for federal income tax purposes.

(b) *Type of return.* — (1) If the limited liability company is classified as a partnership, as defined in § 761 of the Internal Revenue Code, it shall file a partnership tax return.

(2) If the limited liability company is classified as a corporation under Chapter 1, Subchapter C or Subchapter S of the Internal Revenue Code, it shall file the appropriate corporate tax return.

(c) *Only one member.* — If the limited liability company has only one member and it is disregarded as an entity separate from its member for federal income tax purposes, the profit or loss of the limited liability company shall be reflected on the income tax return filed by the member of the limited liability company.

23

a tax on *CNI*'s income. Accordingly, the CNI Subsidiaries would have to pay the tax on behalf of CNI, not CNI Government.

Because the tax would be imposed on CNI's income earned via the CNI Subsidiaries, and the CNI Subsidiaries would only be paying tax on CNI's behalf, our next task is to determine whether CNI's income is taxable under Maryland law.

### ii. *What is Taxable as Nonresident Income?*

"Nonresident taxable income" includes "any income described in § 10-210(b)(1) through (4)" of the Tax-General Article, which includes several forms of income arising from activity in this State. TG § 10-102.1(a)(6).

Section 10-210 states, in relevant part:

(a) The amounts under this section are **subtracted from the federal adjusted gross income of a nonresident** to determine Maryland adjusted gross income.

(b) **To the extent included in federal adjusted gross income**, the subtraction under subsection (a) of this section includes all income other than:

    (1) income derived from real or tangible personal property located in the State, whether the income is derived directly or from a fiduciary;

    (2) income derived from:

        (i) a business that is wholly carried on in the State and in which the individual is a partner, shareholder of an S corporation, member of a limited liability company as defined under Title 4A of the Corporations and Associations Article, but only to the extent the company is taxable as a partnership under § 761 of the Internal Revenue Code, or proprietor; or

        (ii) an occupation, profession, or trade that is wholly carried on in the State;

24

(3) the part, allocable to the State under § 10-401 of this title, of income derived from:

    (i) a business that is carried on both in and out of the State and of which the individual is a partner, shareholder of an S corporation, member of a limited liability company as defined under Title 4A of the Corporations and Associations Article, but only to the extent the company is taxable as a partnership under § 761 of the Internal Revenue Code, or proprietor; or

    (ii) an occupation, profession, or trade that is carried on both in and out of the State; and

(4) income from Maryland State Lottery prizes or winnings from any other wagering, as defined in § 10-905(e) of this title, in the State.

TG § 10-210(a)-(b) (emphasis added).

Section 10-107 of the Tax-General Article states that "[t]o the extent practicable, the Comptroller shall apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State." The Court of Appeals explained that this statute "is not a direct authorization for [the Comptroller] to incorporate into the Maryland tax code whatever I.R.C. [i.e., Internal Revenue Code] provisions it sees fit to apply; rather, section 10-107 expresses a policy of comity that, when exercising any legislatively-authorized powers that parallel an I.R.C. provision, [the Comptroller] must comply with the judicial and administrative interpretations of that federal statute." *Comptroller of Treasury v. Gannett Co., Inc.*, 356 Md. 699, 720 (1999).

In *Gannett*, the Comptroller assessed income tax against a Delaware corporation—Gannett Company—which owned several subsidiary media companies. *Id.* at 702. Gannett Company "maintain[ed] four centralized, intercompany accounts with its subsidiaries. The subsidiaries deposit[ed] their proceeds in the appropriate account and

25

then [drew] on that account to pay their related individual expenses." *Id.* "If the subsidiary spen[t] more money than it deposit[ed], [Gannett Company] maintain[ed] an interest-free credit with the subsidiary." *Id.*

According to the Comptroller, even though these credits were interest-free, interest could be imputed to them under federal tax law. *Id.* at 702-04 (citing 26 U.S.C. §§ 482, 7872). However, Gannett Company filed a consolidated federal tax return on behalf of itself and its subsidiaries—and it did not report the intercompany account credits on this return. *Id.* at 705. It failed to report these credits

> because any interest income that could have been imputed from the credits under [26 U.S.C.] §§ 482 and 7872 would have been offset by the reciprocal imputed interest deduction attributed to each subsidiary. In other words, any interest income [Gannett Company] would have had to report on its consolidated federal tax return would presumably have been eliminated by any interest expense deduction that appellee could have claimed on behalf of its subsidiaries.

*Id.* Maryland, however, "does not allow related corporations to file consolidated returns." *Id.* (citing TG § 10-811). Accordingly, the Comptroller claimed that Gannett Company was required to report the intercompany account credits as taxable income on its Maryland tax return. *Id.* at 706.

Gannett Company argued that, unlike federal law, Maryland law does not allow the imputing of interest income to interest-free debts; therefore, there was no additional income for it to report on its Maryland return. *Id.* at 709. The Comptroller responded by arguing that the use of federal taxable income as the base for Maryland income tax "empowers it to utilize the income-determining provisions of the I.R.C. in their entirety, as necessary."

26

*Id.* The Comptroller also argued that it had broad authority to import federal tax provisions into Maryland law via TG § 10-107. *Id.* at 720.

The Court of Appeals rejected the Comptroller's arguments. First, the Court held that Maryland's use of federal taxable income as the base for its state income tax does not give the Comptroller all the associated income-determining powers defined in the I.R.C. *Id.* at 709. Instead, it means simply that the base for Maryland income tax is what appears as taxable income on the taxpayer's federal return, subject only to the modifications stated in Tax-Gen. §§ 10-305 through 10-308.[15] *Id.* at 710, 714 (citing *Comptroller of Treasury Income Tax Div. v. Am. Satellite Corp.*, 312 Md. 537, 540 (1988)).

Second, the Court held that TG § 10-107 "is not a direct authorization for [the Comptroller] to incorporate into the Maryland tax code whatever I.R.C. provisions it sees fit to apply; rather, section 10-107 expresses a policy of comity that, when exercising any legislatively-authorized powers that parallel an I.R.C. provision, [the Comptroller] must comply with the judicial and administrative interpretations of that federal statute." *Id.* "Section 10-107 applies where the Maryland tax code is 'inextricably keyed' to the federal tax code 'by virtue of its adoption of the federal law.' It avoids the 'anomalous result' of the taxpayer achieving a different result regarding payment of Maryland tax where the

_____

[15] It is worth noting that the base for Maryland income tax is tied to the amount that the taxpayer *should* write on the federal return, not the amount actually written on the paper. *Gannett Co.*, 356 Md. at 716. These two amounts should normally be the same, but they diverge if the taxpayer "failed to report certain income on its federal tax return that the I.R.C. *mandated* it to report." *Id.* If Maryland taxable income could not diverge from the amount physically recorded on the federal tax return in this situation, then taxpayers could use misstatements on their federal returns as a lawful excuse to avoid paying Maryland taxes. *Id.*

Maryland tax provision incorporates the federal tax provision." *Id.* (quoting *Lyon v. Campbell*, 324 Md. 178, 185 (1991)) (citation omitted).

The Court also stated:

> Section 10-107 does not grant any authority to [the Comptroller]. The statute merely states that, when [the Comptroller] is specifically empowered to enforce an I.R.C. provision, it must obey the previous administrative and judicial interpretations of the tax law at issue as precedent. The statute does not allow [the Comptroller] to put forth its own interpretation that a federal tax law is incorporated into the Maryland tax code.

*Id.* at 721. Accordingly, the Court concluded that "[i]n calculating Maryland modified income for an affiliated corporation in Maryland, [the Comptroller] generally must accept the figure adopted as taxable income on the corporate taxpayer's consolidated federal return, subject to the specific Maryland modifications allowed under Maryland's tax code." *Id.* at 723.

The Court of Appeals has also considered similar issues in relation to S corporations—i.e., corporations that impute some of their gains and losses to their shareholders for tax purposes. *Marco Assocs., Inc. v. Comptroller of Treasury*, 265 Md. 669 (1972); *see generally* 26 U.S.C. §§ 1363, 1366. In *Marco Associates*, an S corporation filed a federal tax return which reported $211,138.06 in taxable income, mostly derived from capital gains. *Marco Assocs.*, 265 Md. at 671. At the time *Marco Associates* was decided, Maryland "d[id] not accord Subchapter S treatment to a corporate taxpayer which elects to be treated as such for federal tax purposes," and instead treated the corporation

28

"as if it were an ordinary business corporation." *Id.* at 675-76.[16]  So, although the federal

tax on this income was presumably paid by the corporation's shareholders, the Comptroller

sought to collect state taxes on a portion of the corporation's income directly from the

corporation itself.  *Id.* at 671-72.  The corporation challenged the Comptroller's

assessment, arguing, among other things, that it violated the Fourteenth Amendment.  *Id.*

at 676.  This argument depended in part on an assertion that the corporation's reporting of

its capital gains was due to a "technical requirement of the Internal Revenue Code, rather

than because of any real change in the situation of the parties." *Id.* at 678.

> The Court of Appeals rejected the premise of the corporation's argument:
>
> This argument . . . overlooks the manner in which the Maryland income tax is structured.  **Its focus is on the taxable income of a corporation, or the adjusted gross income of an individual, as the same is developed in the taxpayer's federal income tax return, subject to the modifications permitted by [Maryland law], whether a federal tax is or is not generated by the federal return.**
>
> The fact that a gain recognized by a Subchapter S corporation and reflected in its taxable income may be attributed to the corporation's shareholders under federal law does not alter the fact that it remains within the concept of taxable income under [Maryland law]—a figure upon which the Maryland tax is based.

*Id.*; *see also Gannett Co.*, 356 Md. at 714 ("[T]he figure reported as federal taxable income

on a federal return is the base figure used on the Maryland tax form as Maryland modified

income, subject to recalculation only by sections 10-305 through 10-308."); *Katzenberg v.*

---

[16] Today, Maryland law mirrors federal law on the treatment of S corporations. *Md. State Comptroller of Treasury v. Wynne*, 431 Md. 147, 157-58 (2013); *Comptroller of Treasury v. Colonial Farm Credit*, 173 Md. App. 173, 182 (2007); TG § 10-104 (stating that the income tax does not apply to S corporations except as provided in TG §§ 10-102.1 and 10-304(3)).

*Comptroller of Treasury*, 263 Md. 189, 204-05 (1971) ("[Federal taxable income] is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.").

Our decision in *Comptroller of the Treasury v. Colonial Farm Credit* is instructive here. 173 Md. App. 173 (2007). In that case, Colonial Farm Credit, an Agricultural Credit Association ("ACA"), sought a Maryland income tax refund from the Comptroller. *Id.* at 175, 178. Colonial Farm Credit was formed by the merger of two other agricultural associations: a Federal Land Bank Association ("FLBA") and a Production Credit Association ("PCA").[17] *Id.* at 178. Importantly, FLBAs are exempt from both federal and state income tax, but PCAs are not. *Id.*

After a dispute with the IRS, the IRS and Colonial Farm Credit reached two "closing agreements" to determine Colonial's federal tax liability. *Id.* at 187. A closing agreement is "a written contract between the taxpayer and the Secretary of the Treasury" which is meant to "determine finally and conclusively a taxpayer's liability for a particular tax year or years." *Id.* at 185. The first closing agreement reached with Colonial Farm Credit "entitled Colonial to a refund of 60% of its 'long-term taxable income' for the years 1991 and 1993-1999, and a second closing agreement [had] the same effect for the year 2000." *Id.* at 180.

---

[17] The "principal function of FLBAs is to facilitate long term real estate mortgage loans from Farm Credit Banks, and they are exempt from federal and state income taxation." *Colonial Farm Credit*, 173 Md. App. at 178 (citations omitted). The "general purpose of PCAs is to 'make, guarantee, or participate with other lenders in short- and intermediate-term loans and other similar financial assistance' to qualified agriculture-related borrowers. PCAs are not tax exempt." *Id.* (quoting 12 U.S.C. § 2075).

Based on the federal closing agreements, Colonial Farm Credit sought from the Comptroller a refund of Maryland income taxes for the years at issue. *Id.* Colonial argued that the closing agreements "constitute[d] a binding determination of its taxable income under the IRC, which is the correct basis for its Maryland income tax liability for the years at issue." *Id.* at 189. The Tax Court, however, held "that the closing agreements are merely the result of negotiations between Colonial and the IRS to settle a dispute over Colonial's federal tax liability, and that they do not establish Colonial's federal taxable income for purposes of its state income tax." *Id.*

On appeal, the Comptroller argued that "the doctrine of conformity is based on 'the objectivity of the Internal Revenue Code as a measurement or yardstick,' rather than 'the subjective give and take' of 'negotiated settlements and compromises.'" *Id.* at 191. Colonial Farm Credit responded that "because [TG] § 10-107 requires the Comptroller to 'apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State,' the Comptroller [was] bound" by *United States v. Farm Credit Services of Fargo, ACA*, 89 A.F.T.R.2d (R.I.A.) 2002-334-36 (1998), where a federal district court held that ACAs have a federal income tax exemption. *Colonial Farm Credit*, 173 Md. App. at 179-80, 192.

We explained that "[t]he essential, initial determination which must be made before a corporation may be subjected to Maryland tax is whether that corporation has federal taxable income," *id.* at 181 (quoting *Ford Motor Land Dev. Corp. v. Comptroller of Treasury*, 68 Md. App. 342, 353 (1986)), and this figure "cannot be modified for Maryland tax purposes based on federal tax breaks," *id.* at 182 (citing *Marco Assocs.*, 265 Md. 669).

31

We held that "the Comptroller has the authority to levy taxes on the taxpayer's true and accurate federal taxable income, even if that amount differs from the figure that was accepted by the IRS." *Id.* at 192. The Comptroller does not, however, have the authority to levy taxes on income that is *not* included in the taxpayer's federal taxable income. *Id.* Because the closing agreements "finally and conclusively" determined Colonial Farm Credit's federal taxable income, the taxable income figures established by the agreements were "binding as the basis for Maryland income tax." *Id.* at 192-93. Therefore, the Comptroller was not permitted to recalculate Colonial Farm Credit's federal taxable income based on the Comptroller's contrary view of what portions of Colonial's income were taxable under federal law. *Id.* at 192-93.

Returning to the present case, we agree with the parties that the PTE income tax only applies to nonresident taxable income "[t]o the extent included in federal adjusted gross income."[18] TG § 10-210(b). The language of TG § 10-210 requires some careful parsing, but its effect is to calculate Maryland adjusted gross income as follows: first, begin with federal adjusted gross income as determined by federal law; then, subtract all income that is not attributable to Maryland, leaving only the Maryland-specific income sources defined by TG § 10-210(b)(1)-(4). This means that Maryland adjusted gross income—and

---

[18] The parties disagree in some ways about how TG § 10-102.1(a)(6) and TG § 10-210 are best constructed, but they seem to agree that nonresident taxable income is a subset of federal adjusted gross income.

more importantly, nonresident taxable income—is equal to federal adjusted gross income minus the portions that are not generated in Maryland.[19]

We also take this opportunity to address the CNI Subsidiaries' contention that the Comptroller cannot collect PTE income tax from them because they are disregarded entities. Their argument is essentially that all the income of a disregarded entity is attributed to the entity's owner, and that, therefore, the disregarded entity has no income of its own to be taxed. The Comptroller's response, as expressed at oral argument, is that TG § 10-102.1 (pass-through entity income tax) is the more specific statute which controls over TG § 10-819 (disregarded LLCs), the more general statute. Therefore, in the Comptroller's view, a pass-through entity is taxable under TG § 10-102.1 even if it also qualifies as a disregarded entity.

We think that both parties misconstrue the statutes at issue here. Neither statute is more general or specific than the other; they are simply addressed to different issues. Section 10-819(c) is addressed to the situation in which an LLC has a single member and provides the convenience of allowing the member to combine the member's and the LLC's income in a single tax return. Section 10-102.1, on the other hand, is addressed to LLCs, S corporations, or similar entities that have members who do not reside in this State. It provides the Comptroller with the power to collect income tax on those members'

---

[19] Under the Maryland tax code, "nonresident taxable income" and "Maryland adjusted gross income" are different names for the same thing, applicable in different contexts. They are each equal to the sum of the income defined by TG § 10-210(b)(1)-(4), but the term "nonresident taxable income" is used specifically when speaking about a pass-through entity with a nonresident member.

Maryland income through their local LLCs (including disregarded entities), when otherwise they might be out of reach.

Accordingly, we reject the outcome urged by the CNI Subsidiaries. In the situation in which an LLC (or other pass-through entity) only has a single out-of-state member, treating the LLC as a non-taxable entity in the manner CNI Subsidiaries suggest would mean the Comptroller would only be able to collect income tax from the LLC's member. But as a nonresident, the member may be beyond the Comptroller's reach, and the obvious purpose of TG § 10-102.1 would be frustrated.

We do not believe that it was the General Assembly's intent to allow all single-member LLCs with a nonresident member to completely avoid Maryland income taxes, both on the LLC and its member. Accordingly, we conclude that the PTE income tax may be collected from a pass-through entity even if it also qualifies as a disregarded entity.

Applying these principles to the present case, we conclude that whether CNI's income is taxable under Maryland law depends on whether its income is taxable under federal law. If CNI has zero federal adjusted gross income, then CNI (via the CNI Subsidiaries) has zero nonresident taxable income, and no tax is owed in this case.

### iii.    Is CNI's Income Subject to Federal Tax?

### The Chickasaw Nation is not Subject to Federal Income Tax

Individual members of a Native American tribe are generally subject to federal income tax for income earned outside of a reservation. *See, e.g.*, *LaFontaine v. Comm'r of Internal Revenue*, 533 F.2d 382, 382 (8th Cir. 1976) (holding Native American taxpayer not exempt for income tax from wages earned as machinist). By contrast, although neither

34

Congress nor the Supreme Court has ever expressly addressed the issue, it has long been the position of the IRS that a Native American tribe is not subject to federal income tax for income earned by the tribal entity itself. *Uniband, Inc. v. Comm'r of Internal Revenue*, 140 T.C. 230, 241 (T.C. 2013). The United States Tax Court has adopted the same position:

> Income tax is imposed in section 1 [of the Internal Revenue Code] on "individuals" and in section 11 on "corporations"; but as an Indian tribe, TMBCI [i.e., the Turtle Mountain Band of Chippewa Indians] is neither an individual nor (since it has not been incorporated) a corporation.
>
> *       *       *
>
> **Thus, the reason TMBCI is not subject to Federal income tax is not that Indian tribes are inherently immune from Federal income tax, nor that they have been exempted from Federal income tax by treaty or statute, but rather simply that Congress has never imposed the Federal income tax on Indian tribes.** For decades the Commissioner's position has reflected this truism.
>
> However, the persistence of this circumstance of non-liability over so many decades shows that it can hardly be the result of congressional oversight but must instead be deliberate. **Thus, while there is no positive provision in the Code exempting Indian tribes from the income tax, Congress's persistent exclusion of them from the Federal income tax regime may be thought of as an "exemption[.]"**

*Id.* at 244-45 (emphasis added); *accord Perkins v. Comm'r of Internal Revenue*, 970 F.3d 148, 161 n.12 (2nd Cir. 2020) (comparing Congress's treatment of tribes as entities to its treatment of individual members of the tribes and citing with apparent approval to *Uniband*).

In the absence of any clear authority to the contrary, or any arguments to the contrary from the parties to this case, we adopt the United States Tax Court's persuasive reasoning

in *Uniband* that Congress's silence on this issue is "deliberate," and that Native American tribes are therefore not subject to federal income tax.

### As a Section 17 Corporation, CNI Shares the Chickasaw Nation's Status

The Indian Reorganization Act of 1934, 25 U.S.C. §§ 5101-5143, was enacted "to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically." *Morton v. Mancari*, 417 U.S. 535, 542 (1974). Of particular relevance in this case is section 17 of the Indian Reorganization Act, now codified at 25 U.S.C. § 5124, which allows Native tribes to petition the Secretary of the Interior for a federal charter of incorporation. By the terms of the Indian Reorganization Act, section 17 did not originally apply to a named set of Native tribes residing in Oklahoma, including the Chickasaw Nation. 25 U.S.C. § 5118. However, in 1936, Congress enacted the OIWA with the intent of expanding the Indian Reorganization Act to include those Oklahoma tribes that were originally excluded. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 918 (6th Cir. 2009).[20] The OIWA grants the Secretary of the Interior the authority to issue a charter of incorporation to "[a]ny recognized tribe or band residing in Oklahoma," and states that the charter may convey the right "to enjoy any other rights and privileges secured to an organized Indian tribe under the [Indian Reorganization Act]." 25 U.S.C. § 5203. Because corporations formed under

---

[20] As the caption of the case indicates, CNI was a party in *Memphis Biofuels*. In that case, the question posed to the Sixth Circuit was whether CNI could assert the sovereign immunity of the Chickasaw Nation. *Memphis Biofuels*, 585 F.3d at 919-20. The Court held that CNI was an "arm of the [Chickasaw Nation] tribe" and that it therefore benefited from the tribe's sovereign immunity. *Id.* at 921. In the present case, the CNI Subsidiaries have not raised sovereign immunity as a defense.

36

the OIWA are substantially similar if not identical to those formed under the Indian Reorganization Act, we will adopt the common practice of referring to them collectively as "section 17 corporations." *See, e.g.*, *Memphis Biofuels*, 585 F.3d at 918 (recognizing that "tribes incorporated under the [Indian Reorganization Act] or OIWA are called [s]ection 17 corporations").

In 1994, the IRS issued Revenue Rulings 94-16 and 94-65. Revenue Ruling 94-16 stated that "[a]n Indian tribal corporation organized under section 17 of the [Indian Reorganization Act] shares the same tax status as the tribe." Accordingly, because the tribe itself "is not subject to federal income tax," the IRS concluded that "any income earned by such a corporation, regardless of the location of the business activities that produced the income, is not subject to federal income tax." This was held in contrast with corporations organized by tribes under *state* law, which "do[] not share the same tax status as the tribe for federal income tax purposes and [are] subject to federal income tax on any income earned, regardless of the location of the business activities that produced the income." In Revenue Ruling 94-65, the IRS adopted the same reasoning for corporations organized under the OIWA.

In 1996, after the formal process of notice and comment, the IRS and the Department of the Treasury issued a collection of amendments to its regulations regarding the "classification of organizations for federal tax purposes." 61 Fed. Reg. 66584-01 (Dec. 18, 1996). These amendments included new language that was consistent with the opinions the IRS expressed in Revenue Rulings 94-16 and 94-65:

An entity formed under local law is not always recognized as a separate entity for federal tax purposes. For example, an organization wholly owned by a State is not recognized as a separate entity for federal tax purposes if it is an integral part of the State. Similarly, tribes incorporated under section 17 of the Indian Reorganization Act of 1934 . . . or under section 3 of the [OIWA] are not recognized as separate entities for federal tax purposes.

26 C.F.R. § 301.7701-1(a)(3).

In *Uniband*, the United States Tax Court issued its first opinion considering section 17 corporations.[21] 140 T.C. at 259-63. Uniband, Inc. was a Delaware corporation solely owned by the Turtle Mountain Band of Chippewa Indians ("TMBCI"), a federally recognized Native American tribe with a reservation in North Dakota. *Id.* at 233. Although Uniband was incorporated under state law, it "argue[d] that it [was] an 'integral part' of TMBCI and should therefore share in TMBCI's exemption from Federal income tax, notwithstanding its ostensibly distinct corporate status." *Id.* at 247.

As part of the court's analysis, it concluded that unlike state-chartered corporations, section 17 corporations are not subject to federal income tax. *Id.* at 259-64. The court explained:

The [Indian Reorganization Act] makes no provision as to tax liability of section 17 corporations, but in 1973 the Supreme Court, in *Mescalero Apache Tribe [v. Jones*, 411 U.S. 145, 157-58 (1973)], shed some light on

---

[21] The case law interpreting section 17 of the Indian Reorganization Act, and the parallel provision in the OIWA, is "extremely sparse, and Congress has provided little guidance on how the statutes' terms are to be construed." *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 733 (9th Cir. 2021) (Berzon, J., concurring in part and acquiescing dubitante in part) (referring to section 17 of the Indian Reorganization Act and 28 U.S.C. § 1362, a jurisdictional statute relating to Native American tribes). There are a handful of cases addressing other issues relating to section 17 corporations—*see*, *e.g.*, *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917 (6th Cir. 2009)—but *Uniband* is the only case we have found that directly addresses the question of whether section 17 corporations are subject to federal income tax.

the issue.  In *Mescalero Apache Tribe*[,] the Supreme Court faced the question [of] whether a tribally owned ski resort was exempt from State tax when it was unclear whether the resort was an unincorporated entity operating under section 16 (i.e., as a governmental organization) or was a section 17 corporation.  *Id.* at 157 n.13.  The Court concluded that under either form the ski resort would be subject to State tax, since the activity was conducted outside of the borders of the Indian reservation.  *Id.* at 157-58.  In so concluding, the Supreme Court stated that "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business."  *Id.* at 157 n.13.

In 1981 the Commissioner, relying on this statement in *Mescalero Apache Tribe*, concluded that a "federally chartered Indian tribal corporation shares the same tax status as the Indian tribe and is not taxable on income from activities carried on within the boundaries of the reservation."  Rev. Ruling 81-295[.]

* * *

In 1994 the Commissioner clarified Revenue Ruling 81-295 in Revenue Ruling 94-16, [stating that a section 17 corporation "shares the same tax status as the tribe.  Therefore, any income earned by such a corporation, regardless of the location of the business activities that produced the income, is not subject to federal income tax."]

* * *

The "check-the-box" regulations, effective January 1, 1997, followed the approach of Revenue Ruling 94-16.  The regulation addressed the classification of section 17 corporations by providing that "tribes incorporated under section 17 of the Indian Reorganization Act of 1934 . . . are not recognized as separate entities for federal tax purposes."  26 C.F.R. [§] 301.7701-1(a)(3).  **Under this regulation, a section 17 corporation is not regarded as separate from the tribe for tax purposes and, as a result, is not subject to Federal income tax.**

*Id.* at 262-63 (footnote omitted) (emphasis added).

We find the Tax Court's reasoning in *Uniband* persuasive and, accordingly, we

adopt its conclusion that section 17 corporations are not subject to federal income tax.[22]

*Uniband*, 140 T.C. at 263.

### *Conclusion*

Our analysis of CNI's Maryland income tax liability ends with the "essential, initial determination" of "whether [CNI] has federal [adjusted gross] income." *Colonial Farm Credit*, 173 Md. App. at 181. As a section 17 corporation, none of CNI's income is taxable under federal law. *Uniband*, 140 T.C. at 263 (citing 26 C.F.R. § 301.7701-1(a)(3)); *see also* IRS Revenue Rulings 94-16, 94-65. CNI therefore has zero nonresident taxable income as the term is defined in TG §§ 10-102.1(a)(6), 10-210(b). Accordingly, we hold that CNI owes zero pass-through entity income tax on the income it earns via its pass-through entity subsidiaries that do business (in this case, for the federal government) in Maryland. For these reasons, the Tax Court erred by affirming the assessment of pass-through entity-income tax against the CNI Subsidiaries. The Tax Court also erred by requiring CNI to complete a federal income tax return because CNI has no federal adjusted gross income.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THE**

---

[22] Authorities are split on the question of whether lower federal court decisions, including decisions of the United States Tax Court, are binding on state courts. *Duty of State Courts to Follow Decisions of Federal Courts, Other than the Supreme Court, on Federal Questions*, 147 A.L.R. 857 (2022). The Court of Appeals has taken the position that such opinions may be considered as persuasive but are not binding, even when they address questions of federal law. *Pope v. State*, 284 Md. 309, 320 n.10 (1979) ("[U]nlike decisions of the Supreme Court of the United States, decisions of federal circuit courts of appeals construing the federal constitution and acts of the Congress pursuant thereto, are not binding on us." (citing Md. Cons. Decl. of Rts. Art. 2)).

**CIRCUIT COURT WITH INSTRUCTIONS TO ENTER AN ORDER REVERSING THE ORDER OF THE TAX COURT; COSTS TO BE PAID BY APPELLEE.**